THOMPSON, J.,
delivered the opinion of the Court.
The accused, the captain of a canal boat and carrier for hire on the James river canal, was on the 7th of December 1848, committed by the mayor of the city of Richmond, upon a charge of feloniously embezzling and fraudulently converting to *713 his own use, a box of merchandise, delivered to him for transportation to Buchanan, the property of Word, Ferguson & Barksdale, merchants of the city of Richmond. He was examined and remanded for further trial by the Hustings court on the 18th of January 1849, and being admitted to bail, he entered into a recognizance with approved security to appear at the' next term of the Circuit Superior court for the county of Henrico and city of Richmond: the witnesses for the Commonwealth were recognized to appear at the same term to give evidence in behalf of the Commonwealth. The accused failed *to appear at the first of the term, his default was recorded, his recognizance estreated, and a scire facias awarded against him and his bail. At a subsequent day of the term he made his appearance; whereupon on his motion the orders of default and award of scire facias were set aside, and he was released from the breach of his recognizance: In the meantime however the witnesses for the Commonwealth, the two recognized, Ferguson and Blair, had appeared and been recognized to the next term, and the cause virtually continued : and then the prisoner was again let to bail and recognized to appear at the next term. Neither at this term nor at the first was any indictment found by the grand jury. Whether the failure to send the indictment to the grand jury at the first term was owing to the failure of the accused to appear before the Commonwealth’s witnesses had been adjourned over and recognized to appear at the next term and the cause virtually continued; or whether the failure to indict at both the first and second terms was owing to the absence of the witness Roberts, the other two Ferguson and Blair, upon whose evidence the bill was eventually found, being present on both occasions, the record does not inform us ; and therefore we can only conjecture. If the non-appearance of the accused at the first term was the cause of the failure then either in whole or in part, the presumption is that the cause of the second failure was the absence of the witness Roberts. At the third term, April 1850, the indictment was found; and then and at the fourth term, November I860, the cause was continued on motion of the prisoner. At the fifth term, April 1851, the indictment which contained but one count and laid the goods charged to be embezzled as the property of Word, Ferguson & Barksdale, came on for trial, was tried, and the jury who tried it returned a verdict of guilty, and assessed the term of imprisonment in the penitentiary at one *year. The prisoner moved for a new trial, which was granted by the Court upon the ground of a variance between the allegata et probata relative to the ownership or property in the goods, which were the subject of the embezzlement. The case then necessarily stood over to the November term 1851, for the new trial. At that term the attorney for the Commonwealth, as it was his duty [ to do, to avoid a second failure upon the ground of variance in the event of the same evidence being adduced on the new trial, and the opinion of the Court remaining the same upon the question of ownership, to wit, that the property of the goods was in the consignees, the Messrs. Aj-res of Buchanan, and not the consignors, Word, Ferguson & Barksdale, asked and obtained leave of the Court to enter a nolle prosequi as to the first indictment, and to send up a new bill; which was found by the grand jury then in session: the prisoner, upon the motion of the attorney for the Commonwealth, being detained in custody to answer the new indictment based upon his examination by the Hustings court for the same offence, varying in nothing but in the incident of ownership or property in the goods. This new indictment contains three counts, all charging the same corpus delicti. The first embraces the old indictment in totidem verbis, laying the property of the goods in Word, Ferguson & Barksdale; the second alleges their ownership in R. M. & Francis Ayres; and the third alleges delivery by Word, Ferguson & Co. of the goods R. M. & Francis Ayres, to the accused to be carried and delivered to them at Buchanan: In short, the new indictment is the old one with two additional or superadded counts. Upon his arraignment upon this new indictment the prisoner tendered a plea in abatement, setting forth that he had not been regularly and legally examined for the offence therein charged. To his plea the attorney for the Commonwealth replied that he had been regularly and legally ^'examined, and remanded by the Hustings court for the offence whereof he was indicted; and vouched the record and proceedings of the examining Court. To this replication the prisoner demurred ore tenus; the attorney for the Commonwealth in like manner joined in the demurrer; and the Court overruled the demurrer: being of opinion that the prisoner had been regularly and legally examined for the offence charged. Whereupon he moved the Court to discharge him from the offence aforesaid, on the ground that three regular criminal terms of the Court had been held since he was examined and remanded for trial before the same, for the said offence, without being indicted for the same: and in support of his motion he vouched the record of the examining Court, shewing that he was examined and remanded for the offence on the 18th of January 1849, and shewing by the record of the Circuit Superior court that more than three regular criminal terms had been held since his examination to wit, on the 3d day of May 1849, 13th of November 1849, 29th of April 1850, 8th day of November 1850, and 28th of April 1851; and alleging that at neither of these terms had he been indicted for the offence aforesaid. The attorney for the Commonwealth opposed the prisoner’s motion for his discharge; and for the purpose of answering and negativing his allegation of a failure to indict in *714 three terms, offered to introduce the record of the proceedings of the Circuit court upon the first indictment, shewing or purporting to shew, that the prisoner had not only been indicted but tried upon the indictment in due time, and found guilty by the verdict of a jury; and applied for and obtained a new trial of the Court upon the ground of variance between the allegations and the proofs. To the introduction of this evidence the prisoner objected; but his objection was overruled, the evidence received and considered, and the prisoner’s motion for his discharge overruled. After-wards, *however, the Court upon the motion of the prisoner, and by his consent and with the consent of the attorney for the Commonwealth, waived its decision upon the motion for a discharge, and the prisoner’s objection to the evidence introduced by the Commonwealth, and adjourned to the General court for its decision thereupon, because of their novelty and difficulty, the following questions:
First — “Ought the Court, on the said motion of the prisoner to be discharged, to receive and consider the record and proceedings offered by the attorney for the Commonwealth?’ ’
Second — “Ought the prisoner, on the motion made by him, as aforesaid, to be discharged from the crime with which he now here stands indicted, or from further prosecution for the same?”
The first question is free of all doubt and difficulty, admitting of a prompt and easy solution. We are all agreed that the evidence objected to ought to be received and considered; indeed, it is the only evidence admissible or competent on such an issue. The prisoner had alleged a failure to indict within the period of three regular terms; and to sustain the allegation had introduced the records of the examining Court and of the Circuit court, shewing the date of his examination and the holding of more than three actual regular terms, and denied that he had been indicted at any of them. To such an objection or allegation, if untrue, but one answer could be given by the attorney for the Commonwealth — to traverse the failure, and allege the finding of an indictment or a trial, as the case may be, and vouch the record to prove it. Of the indispensable necessity of adducing record evidence to proye the fact of indictment or trial, there surely cannot be a doubt. The real question as to the sufficiency of the evidence to support the issue on the part of the Commonwealth. That, in truth, is the issue involved *in the second question adjourned, and the only one worthy of serious consideration by this Court. It would have been the only one adjourned, but for the informal and summary manner, ore tenus, in which the questions were presented in the Court below. Had the prisoner, instead of his summary motion, pleaded specially his ground or matter of discharge, the attorney for the Commonwealth would have replied and vouched the record relied on by him; the prisoner would have demurred to the replication, and upon joinder in demurrer the issue would have been formally and regularly developed, which the second question adjourned presents for our decision ; — that is to say, whether he be entitled to his discharge in consequence of the alleged failure to indict or try within the term prescribed by law; or, on the other hand, whether the record adduced by the Commonwealth be sufficient to establish her pretension that he was indicted or tried in proper time to render him still liable to further prosecution for the offence.
This question has been elaborately and ably argued by the counsel for the prisoner, and by the attorney general and his associate, the attorney for the Commonwealth, in the Circuit court for the county of Hen-rico and city of Richmond. But it is worthy of remark, whilst the counsel of the prisoner have on this occasion displayed their accustomed ability and ingenuity, and have by their arguments been conducted to the same goal, the right of the prisoner to his discharge, they have arrived at one and the same favourable conclusion from very diverse and conflicting premises, and by a very dissimilar, if not adverse, course of ratiocination. The first counsel argued that the accused had not been legally examined for the offence for which he was re-indicted, upon the ground that the offences charged in the first and last indictments were essentially different, and that therefore he was entitled to his *discharge. But if precluded from raising that question, as it had been decided by the Circuit court, and was not adjourned to us, and upon the hypothesis that he had been properly examined, he contended that the nolle prosequi put an end to the prosecution, sweeping off, nullifying and rendering functus officio, not only, the first indictment, but the examination of the called Court, commitment and all; and that therefore the prisoner was illegally detained in custody, and was entitled to his discharge at the time he moved for it in the Court below. On the other hand, the last counsel not only admits, but insists on as conces-sums in the cause, not to be controverted by the prisoner or the Commonwealth, that the offence charged in the last is identical with that alleged in the first indictment, and that the prisoner was regularly and legally examined and remanded, and could not be again examined therefor; and he predicates his argument exclusively upon the Commonwealth’s failure to indict in due time after the examination.
If the first counsel had been right in his premises, in assuming that the offences-were not the same, that the party had not been legally examined, or that the nolle prosequi was productive of the consequences he supposed, the conclusion he drew from these premises did not follow, but the very reverse: The legitimate conclusion would be, that whilst the prisoner could not be arraigned and tried on this indictment, he was not to be discharged, but detained in *715 custody until proceedings de novo could be instituted against him. But that the counsel is totally mistaken in his premises as to the non-identity of the offence, the insufficiency of the examination, and the effects and consequences of a nolle prosequi, is as abundantly established by authority as it is manifest in reason. See Halkem’s Case, 2 Va. Cas. 4; Derieux’s Case, Ib. 379; Mabry's Case, Ib. 396; Huffman’s Case, 6 Rand. 685; Thomas’s Case, *2 Leigh 741; Lindsay’s Case, 2 Va. Cas. 345; and Wortham’s Case, 5 Rand. 669.
The arguments of the two counsel are direct antagonisms of each other, and both cannot be sound. One at least must be repudiated, if either can stand the test of analysis and criticism. We have shewn that the first stands condemned by reason and authority, and now let us see whether the last, (which is certainly more plausible,) is any more tenable or sound, when examined and tried by the same tests. The objection taken by the prisoner was for a failure to indict within three terms after the examination. It would have been more accurate and strictly technical to have objected for a failure to try, since the penalty or sanction for a failure to indict is only discharge from imprisonment, whether with or without bail we will not stop to enquire. But as there could be no trial without an indictment, we may consider the objection for a failure to indict for three terms as inclusive of, and tantamount to charging a failure to try; and so considering it, we come to the consideration of the ground taken by the last counsel. This ground is, that a failure to indict for three terms after the prisoner has been remanded, entitles him to be discharged from the crime, unless the Commonwealth can bring herself within some of the exceptions expressed in the statute. And that although for this offence the accused was both indicted and tried in due time at the fifth term upon the first indictment, according to the provisions and within the exceptions or savings of the statute, and was liable to be again tried at the sixth term, when a nolle prosequi was entered and a new indictment found; yet the Commonwealth, by abandoning the first and re-indicting him, has placed herself in the same predicament as if no indictment had been ever found or trial had or demanded until the sixth term, the time of finding the second indictment and of his arraignment thereupon, and that consequently more than three ^regular terms passed after his examination without indictment or trial; and the prisoner is therefore entitled to his discharge under the statute. Whilst it is admitted on all hands, and was so adjudged in Vance’s Case, 2 Va. Cas. 132, 162, that the prisoner was triable again upon the first indictment, it is insisted, nevertheless, that he is not so liable, or to the same extent, upon the new and more perfect one.
A construction of the law that would require us to concur in such a conclusion as this, would certainly be productive of very inconvenient consequences, if it did not convict the law itself of the grossest defect and most palpable absurdity; besides bringing its provisions in direct repugnancy and irreconcilable conflict with each other. We should need no better illustration of such effects and consequences than this case would furnish. The prisoner was charged with a high crime, for which he was prosecuted with due diligence; because a diligence that satisfied the requirements of the law. He was indicted at the third term, tried and convicted at the fifth, and verdict set aside because of a variance. Three out of four of the failures to indict and try between the examination and trial were owing to his own default. He was confessedly liable to be tried again on the same indictment, for nothing had occurred to discharge him from the offence: as liable to trial on the same indictment as if he had been indicted, tried, convicted, and the verdict set aside at the first term instead of the fifth. Had he been acquitted for the variance or by reason of a defect of form or substance in the indictment, he was by the express provisions and injunctions of the law liable to be again tried. If so, when acquitted for a variance or for a defect in the indictment, a fortiori must he be when convicted and the verdict is set aside by the Court for such defect or variance. In either case a new indictment would generally be necessary either to make the charge quadrate *with the nature of the offence, or to adapt it to the evidence disclosed by the first trial to avoid a recurrence of the variance and a second failure to procure an effectual and final conviction. To this indictment a plea of auterfois acquit or auterfois convict would be of no avail; and yet it is said whilst the party still continues liable to be tried upon the defective indictment or the one obnoxious to the objection of variance upon which he cannot be convicted; and notwithstanding the law repudiates his jilea of former acquittal or former recovery, and makes it the duty of its officers to prefer against him an indictment adapted to the offence and the evidence to sustain the charge, when the new indictment is preferred he may plead to it a failure to indict and try within three terms, and that it is no good answer to the plea for the Commonwealth to shew that from the period of the examination down to the date of her plea, she has been in hot pursuit and diligently prosecuting, and the prisoner all the while staving off and continuing and delaying a trial upon the defective indictment; and not only so, but that she indicted, tried and convicted him upon that defective indictment. To justify such a construction of the law as this, we should have to interpolate the 13th sec. of ch. 207, and the 36th sec. of ch. 208, at pages 770, 778, of the Code of 1849, and read them as provisos to sec. 16, ch. 199, page 751, of same Code, so as to authorize the trial and conviction of a party upon a new indictment or proper accusation who has been *716 acquitted on the ground of variance, or upon an exception to the form or substance of the indictment: provided this new indictment be found and trial had within three terms of the examination; a requirement or condition in many cases even now an impossibility to comply with or perform; and if we were to sanction the construction contended for it would be so in most or all; because of the temptation it would hold out to culprits to *stave off a trial, so that in the event of a defective indictment having been found or variance appearing on the trial, they could avail themselves of this statutory discharge. It would not only allow the accused to take advantage of his own wrong if he has been successful in keeping the Commonwealth at bay for more than three terms on the defective indictment, but it rewards him with an acquittal for it. It makes it then his interest and his policy in all cases in the first place to stave off the trial by continuances and other subterfuges as long as possible; and then after having exhausted all the delays of the law, he goes to trial upon an indictment defective in form or substance or obnoxious to the objection of variance, knowing that as the law now is, whilst upon such an indictment he cannot be effectually convicted if tried even on the merits, he can be finally and forever acquitted if so tried. He takes then the double chance of acquittal by the jury, and if he fail in that, a new trial from the Court on account of the defect or variance; and is then secure by lapse of time from further prosecution for the offence upon a new indictment: And this would be the result no matter how the delays on the first indictment were occasioned; whether by inevitable accident, continuances for the prisoner, failures of juries to agree, setting aside of their verdicts, appeals to the General court by writ of error on the part of the prisoner or otherwise. It would make the law grossly inconsistent with itself in providing that a party should be tried upon a new accusation or indictment, a party not discharged from prosecution for the offence upon the old and defective indictment, and yet to couple with it an implied proviso that would disable its officers by the use of any diligence from complying with its injunctions. It would be obnoxious to a still more glaring inconsistency. If the old indictment were so vacant in its charges from the record of the examining Court as to be abatable *on that account, or so grossly defective in form or in substance as to require another examination to justify the finding of the true indictment, it is conceded that the party is not entitled to this statutory discharge ; but is liable to be proceeded against de novo by commitment, examination and indictment, to trial and conviction; and yet for a minor defect, requiring no new examination, but only a new indictment to guard against a variance upon a second trial, the prisoner is entitled to his discharge. So that the construction contended for leads to the strange result that a prisoner’s situation is better for being convicted though abortively, upon a defective indictment, or one objectionable upon the score of variance upon the merits, than if acquitted by the jury for the variance or for the defect in form or substance: and the Commonwealth’s condition, is worse when the indictment is good on its face both in form and substance, and only obnoxious to the objection of a variance, than when it is totally and incurably defective both in form and substance. The answer of the prisoner’s counsel to all these incongruities and absurd consequences is, ita lex scripta est, it is so written and must be so interpreted, otherwise the provisions of the law entitling the accused to a discharge upon failure to try within the time prescribed, might be evaded by means of defective indictments preferred against him, whereby he might be imprisoned or harrassed for an indefinite time. And to guard against so remote and visionary a danger, so improbable if not impossible an evil as abuse and evasion on the part of the Commonwealth through her prosecutors, by such means and instrumentalities, we are invoked to adhere to the strict letter of this law, regardless of its reason and spirit, and of the effects and consequences of our construction, and of the controlling influence of another part of the same statute; whereby the law is rendered not only grossly defective and palpably absurd, but productive of *the practical mischief of operating the acquittal and discharge from prosecution of atrocious offenders against the laws.
By adopting the construction contended for we should in truth be adhering to the letter and sticking in the bark; we should violate the just rules of construction as much as would he who should decide that the law mentioned by Puffendorf, which forbade a layman to lay hands on a priest, not only applied to him who hurts a priest with a weapon, but to him who laid hands on him for the purpose of doing him some office of kindness, or rendering him aid and assistance; or that the Bolognian law mentioned by the same author, which enacted that ‘ ‘whoever drew blood in the streets should be punished with the greatest severity,” extended to the surgeon who opened the vein of a person that fell down in the street with a fit; or that, in the case put by Cicero or whoever was the author of the treatise inscribed to Herenius, cited by Blackstone as illustrative of a construction of law by its reason and spirit, the sick man was entitled to the benefit of the law (upon the vessel’s coming safely into port though his remaining was the result of inability from sickness to escape), which law provided that those who in a storm forsook the ship, should forfeit all property therein, and the ship and lading should belong entirely to those who staid in it. 1 Black. Com. 61.
If we trace our legislation on this subject from the revolution down to the present *717 day, it will be apparent, as was well observed by the attorney general, that its whole purpose was and is to carry into practical operation the 8th section of the bill of rights which guaranties to every one accused of crime a speedy trial, and thereby secures him against protracted imprisonment. And this provision of the bill of rights announced or enacted no new principle or safeguard of freedom. It was but the re-affirmance of a principle declared and consecrated by the famous habeas corpus act, 31 ^Charles 2, ch. 2, that second Magna Carta of English liberty. By that act it is provided that every person committed for treason or felony shall, if he requires it, the first week of the next term or the first day of the next session of oyer and terminer, be indicted in that term or session or else admitted to bail; unless the King’s witnesses cannot be procured at the time; and if acquitted or if not indicted or tried in the second term or session he shall be discharged from his imprisonment for such imputed offence. The object of this provision was to prevent the accused from being detained in prison an unlimited time before he is brought to trial. And the principal ground for bailing upon this act, and indeed the evil the act was chiefly intended to remedy, is the neglect of the accuser to prosecute in time. Even in case of high treason, where the party has been committed upon the warrant of the secretary of state, after a year has elapsed without prosecution, the Court will discharge him upon adequate security being given for his appearance. And so also after any unusual delay in case of felony or any inferior offences. 1 Chitty Cr. Raw 131, 159. Here then we have the prototype of the 8th section of our bill of rights, and our subsequent legislation on the subject. The acts of 1786, 12 Stat. at Barge 340, and 1792, 1 Stat. at Barge, N. S., ch. 13, § 10, p. 22, are but transcripts of the habeas corpus act, so far as they entitle the party to be bailed or discharged from imprisonment upon failure to indict at the first or second term or session, with a new and additional provision for a discharge from the crime upon failure to try at the third. The revised act in the Code of 1819, ch. 169, § 28, p. 607, is but a transcript of the preceding enactments, with the addition of the exceptions or savings of the failure to try proceeding from a continuance granted on the motion of the prisoner, or from the inability of the jury to agree. And the acts of 1847-8, sections 12 and 45, pages 144, 1S2, and the Code of ^Virginia of 1849, p. 770, § 13, p. 778, '£ 36, omitting the provision as to right to bail upon failure to indict at the first term, substantially re-enact the other provisions of the Code of 1819, as to the failure to indict at the second and try at the third, with additional exceptions or savings of the prisoner’s escaping from jail or failing to appear according to his recognizance. No Virginia case in point has been cited on either side of this question; and it is believed none can be found. The prisoner’s counsel relied on Ca wood’s Case, 2 Va. Cas. 527, as a conclusive authority. But it wants one important, we might say indispensable feature, to render it at all parallel with or analogous to this. Cawood had not been indicted at all; an indictment, the finding of which is not matter of record, being tantamount to no indictment. The great question in that case was whether the accused had been indicted in legal contemplation. The Court held as there was no record of the finding, he was not; that it requires not only the foreman’s endorsement of “true bill” signed by himself, but a record in Court of the fact of finding, to make the bill a legal bill of indictment: And the residue of their decision followed as a necessary consequence; that if the prisoner had been legally examined, and three terms had elapsed without a legal indictment, he was entitled to be discharged from the crime.
We have been referred by the attorney general and his associate to Barker’s Case, 2 Va. Cas. 122; Vance’s Case, Ibid. 132, 162; and Bevi Gibson’s Case, Ibid. 70, 111; not as direct authorities, but to shew a trial after three terms, and a successful re-indictment and conviction after the first had been abandoned, or after errors in arrest of judgment had been sustained. In Vance’s Case, though three terms had passed, the new trial was upon the same indictment; and in Barker’s and Gibson’s Cases, where the trial was upon new indictments, it does not appear that three terms had ^passed; or that the question was raised if they had. So that, after all, we are left to decide this case without express authority to govern us, according to our views of the true construction of the law.
We are not left however, without the lights of analogy to guide us, furnished by the construction put upon the old law by the General court in Thompson’s Case, 1 Va. Cas. 319; Bovett’s Case, 2 Va. Cas. 74; Santee’s Case, Ibid. 363; and Vance’s Case before cited. They decided that the old law was not to be literally construed; that the word term used in the statute did not mean a special, but a regular stated term; and a regular or stated term actually holden, and not the expiration or lapse of the period for holding it fixed by law; and that a failure of the jury to agree was one of the exceptions or savings fairly and necessarily implicable though not enumerated in the statute. And in Vance’s Case where three terms had passed, the Court said, it was not proper to let the prisoner have the benefit of the reversal of a sentence pronounced at one of these terms, and then put him in a better condition in consequence of his having been convicted, than he would have been if the jury had been unable to agree upon a verdict against him. The exceptions implied by the Courts in the old law and subsequently incorporated with additional ones in the Code of 1819, the criminal statute of 1847-8, and the Code *718 of 1849, so far from favouring the conclusion contended for, that upon the maxim of expressio unius exclusio alterius, they operated as a limitation upon or denial of the power and authority of the Court to imply other exceptions than those enumerated, in our judgment rather favour the opposite conclusions: They shew a legislative approval of the interpretation of the Courts by engrafting them in the Code and incorporating them into the written text from time to time as the decisions were made; not that they thereby intended to enact that they were the *only exceptions that might occur or should be allowed, but that they were inserted out of abundant caution, and as' declaratory provisions of what the law had been decided to be, and by fair and necessary implication would have been decided by the Courts to be without these provisions or express exceptions.
It is a very immaterial question whether this case is to be considered as coming under the operation of the act of 1847-8 or the Code of 1849, for whether considered under the laws of 1819, 1847-8 or 1849, the decision would be precisely the same; but we deem it proper, since the question has been raised and discussed, to express the opinion we have formed, that although the offence was committed under the law of 1847-8, and so far as the question of guilt, degree of crime, quantum of punishment, and rules of evidence are concerned, would be triable under that statute; yet upon the question of discharge arising after the repeal of that statute, when the Code of 1849 was in operation, it must be governed by the Code.
The sole object and purpose of all the laws from first to last, was to ensure a speedy trial to the accused, and to guard against a protracted imprisonment or harassment by a criminal prosecution, an object but little if any less interesting to the public than to him, and the means, sanctions or penalties it employed for stimulating prosecutors and officers of the law to diligence in the prosecution, was by declaring that the consequence of a failure to indict or try in three terms should operate a discharge from the crime or acquittal, unless it appear that the failure proceeded from no default or delinquency on the part of the Commonwealth, but from causes such as insanity of the prisoner, or the witnesses of the Commonwealth being enticed or kept away, or prevented from attending by sickness or inevitable accident, or by a continuance granted on the motion of the accused, or by reason of his escaping from *jail or failing to appear in discharge of his recognizance, or the inability of the jury to agree on their verdict. Now if the law is to be construed literally, and we are to hold that the legislature has enumerated all the exceptions or savings that will excuse delay, by what authority was Vance .tried after the lapse of three terms; by what authority could persons be tried a second term or oftener after much longer delay occasioned by abortive trials, setting aside of verdicts, or arrests of judgments upon writs of error in the General court; as it is admitted on all hands they may be on the same indictment. It might be enquired what would be done in a case where the prisoner was too sick to be tried within the three terms, or were to ask for a continuance, or did not choose to do so if he could. The statute has in terms provided for the mental malady of insanity, but not "for sickness or corporeal infirmity or disability. And finally, it might be asked how the absurdity could be reconciled of making the inability of a jury to agree upon a verdict a sufficient excuse, and at the same time holding a trial and conviction, and setting aside of the verdict by the Court upon the motion of the prisoner, placing the law, to say the least, in as favourable a position to the Commonwealth in regard to diligence as the disagreement of the jury, to be no excuse. If a failure of the jury constitute a good excuse a fortiori should a trial and conviction, as was held in Vance’s Case, as to reversal of the sentence upon errors in arrest of judgment. The truth is the statute never meant by its enumeration of exceptions, or excuses for failure to try, to exclude others of a similar nature or in pari ratione; but only to enact if the Commonwealth was in default for three terms without any of the excuses for the failure enumerated in the statute, or such like excuses, fairly implicable by the Courts from the reason and spirit of the law, the prisoner should be entitled to his discharge. *When it is admitted that the Commonwealth had the right to have tried the prisoner again upon the old and defective indictment, that he was not discharged from but still triable for the offence, we cannot understand how it is she has lost that right by resorting to a new and more perfect indictment. There was not the least necessity for the attorney for the Commonwealth to dismiss or quash, or enter a nolle prosequi, before he sent to the grand jury the new one. The pendency of the old would have formed no ground of objection to the new; and the counsel for the prisoner is wholly mistaken in supposing that a plea in abatement would have lain to the new. No such plea for such a cause is known to the criminal law. 1 Chitty Cr. Daw 446-7 in margin, 304 top paging; Poster’s Discourses on Cr. Daw 104-5-6. Instead of the single indictment now found, the attorney for the Commonwealth, had he so elected, might have had a separate indictment for each count,' — -might have had all found at one and the same term, or at three successive terms; might, the instant the Court set aside the verdict on the first, have elected, without dismissing, quashing or entering a nolle prosequi, to have him arraigned and tried on the second or third, instead of proceeding, as he now more properly claims to do, upon a single indictment with three counts. All these indictments for the same offence, *719 no matter when found, if found before' the party has become entitled to his discharge by reason of the Commonwealth’s delay or failure to try, constitute, like so many counts in a single indictment, part and parcel of the same prosecution for the same identical offence; and like a new or amended declaration filed upon leave to amend, avail to the same extent in protecting the Commonwealth against the bar of this statute, as the new or amended declaration avails to protect the cause of action in a civil case from the bar of the statute of limitations, if the suit were instituted in time. Indictments, *it is true, being the act of the inquest, are not amendable like declarations in a civil suit, which are the work of the suitor or his counsel; but new indictments found for the same offence are substituted in the place of the old, and quoad hoc operate like the new or amended declaration. So that when a prisoner pleads to a new or second indictment, that he has not been indicted or tried in time, the new indictment having been found and he being arraigned thereon when still liable to be tried for the offence, it is an all-sufficient answer to reply, and shew by the record, an indictment found in time, though a defective one, or to reply and shew by the record, as in this case, a trial, though an abortive one, and rendered so by the action of the Court in setting aside the verdict and awarding a new trial, upon the prisoner’s motion. Whatever objections he could have made to being again tried upon the old indictment, upon the score of failure to indict or try in due time, he can make to the new, and none other.
We do not agree with the prisoner’s counsel that he has any cause to complain, because the old indictment forms one of the counts of the new. It was but a proper measure of precaution on the part of the attorney for the Commonwealth to insert it. The prisoner was not acquitted, but had been convicted on that indictment, and the verdict set aside for variance. Peradventure upon the second trial, the evidence might vary from the first, and render a conviction proper on that count. It was therefore not only admissible, but altogether proper and regular so to frame the indictment that the prisoner, if guilty, might be convicted upon whichever of the three counts the evidence should sustain.
Although we have chosen to base our opinion and rest our construction upon the reason and spirit of the law rather than the letter, we are far from admitting that it does violence to the letter: for it is questionable, *to _ say the least, whether it is not as' well if not better warranted by the words of the statute, taking its provisions in connection and construing them together in order to avoid conflict or repugnance, as that contended for by the prisoner’s counsel. It requires a trial to be had within three terms unless for some of the savings or grounds of exception mentioned: a trial has been had within the time required. The statute neither expressly says, nor can it be fairly interpreted to mean by implication, that it must be an effectual or final trial; because the same statute contemplated that another sort of trial, an abortive one, might take place, improperly convicting or acquitting, upon an indictment defective in form or substance, or in consequence of a variance ; and to meet that emergency, proceeds to require that the accused shall be liable to be again tried upon a new or more perfect indictment, without any proviso or condition that this shall be within three terms from the examination: And to imply such a proviso or condition would in most cases operate a repeal of the enactment requiring the new trial. It would certainly be as legitimate and fair to imply that after the trial had upon the first and defective count, the provision about discharge was exhausted and functus officio, and the Commonwealth, in all cases, remitted to proceedings de novo, as to hold that you must imply a requirement in many cases impossible to be complied with, that the new trial upon the new indictment must be had within three terms after the examination. If a proviso or condition must be implied, and we admit one is fairly inferrible, it is this, and it is a proper medium between the extremes, that where the party is not entitled to a discharge from the crime by any default, failure or delay on the first indictment, he shall be tried on the new one, -with the same diligence and the same diligence only, as would have been required of the Commonwealth upon the old one, had she continued to ^'prosecute upon that indictment. That when the charge in the new count is so variant from the old, or from the record of the examining Court, as to require the interposition of the examining Court by new examination, there the Commonwealth is not only entitled to, but bound to resort to proceedings de novo; but when the charge is so identically the same as to render a new examination neither necessary nor proper, then the new indictment is to be based upon the examination had, and to be proceeded on to trial and conviction or acquittal as the case may be, subject to precisely the same objections for default or failure to try, and no other, that would have been applicable to the old indictment.
A question of considerable practical importance arising upon the construction of this statute, but not in this case, was mooted or incidentally discussed at the bar, applicable alike to a prosecution whether upon the old or a new indictment: and that is whether there must be three successive failures to try or defaults at three consecutive terms, on the part of the Commonwealth, to entitle a prisoner to his discharge ; or whether any three occurring dispersedly or sparsedly in a series of alternate continuances or defaults, as well on the part of the prisoner as the Commonwealth, will suffice; as for instance, suppose a case where ten terms have passed *720 without trial or indictment, the Commonwealth continued the cause at the first term, the prisoner the 2d, 3d and 4th, the Commonwealth the Sth, the prisoner the 6th, 7th, 8th and 9th, .and the Commonwealth the 10th,. is the prisoner discharged by these three continuances, to wit, 1st, Sth and 10th? The judgment of this Court in Green’s Case, 1 Rob. R. 731, would seem to favour the construction which holds three consecutive terms or failures to be necessary, because in that case five terms had passed without trial. It was continued at the first term for the Commonwealth, at *the 2d for the prisoner, and at the 3d, 4th and Sth for the Commonwealth; and the Court said, “His right (the prisoner’s) to his discharge upon the adjournment of the Circuit court, at its last term, (which was the Sth,) became complete and was consummated:” and “That Court however upon its adjournment ceased to have a capacity to pronounce by its order the discharge to which the prisoner was entitled by law,” and therefore it discharged him upon habeas corpus; whereas if three consecutive failures were not necessary he would have been entitled to his discharge at the end of the fourth term, instead of the fifth. But it does not appear from the report of the case that this very question was directly raised, discussed or considered by the Court; and may be said, if adjudged or intended to be adjudged, to have passed sub silentio; or the Court may have deemed it supererogatory to consider whether or not he was discharged after the 4th term, when the Sth had passed, which entitled him to it a fortiori and upon either construction. If this case does not rule the point it must be confessed it is a question of novelty and difficulty, upon both sides of which much may be urged; and that its decision either way is beset with doubts difficult of solution, and objections not a little embarrassing. We have come to no settled conclusion in our own minds either way; and as any opinion we might now pronounce, had one been formed, would be obiter, we purposely abstain fom the intimation even of our present impressions or inclinations of opinion upon the subject. It will be time enough to decide it when it shall directly arise, and we shall be called on to pronounce an authoritative decision, when it can be more thoroughly investigated and discussed by counsel, and more maturely and deliberately considered by the Court than it behooves us or is now practicable for us to consider it.
*For the reasons set forth and assigned in the foregoing opinion, we have come to the conclusion: Hirst. That the Circuit court ought, on the motion of the prisoner to be discharged, to receive and consider the record and proceedings offered by the attorney for the Commonwealth. Second. That the prisoner’s motion for a discharge from the crime with which he stood indicted, or from further prosecution for the same, ought to be overruled: and we respond to the questions adjourned accordingly. We are unanimous on the first: and Judge Field is the only dissentient on the second question.
FIEBD, J.
The only question which I deem it material to consider in this case is whether the prisoner is entitled to be forever discharged from prosecution for the offence with which he now stands indicted under the 36th section of the Criminal Code, chap. 208, Code of 1849, p. 778. Tor if he be entitled to such discharge, it is, as I shall presently shew, to be done under the provisions of that section; although the offence is charged. to have been committed at a time when the Criminal Code of 1847-8 was in operation, and under which this prosecution commenced. The act of 1847-8, will be found in the Sessions acts of that session, page 102, section 28. The present law in relation to the like offence will be found in the Code of 1849, page 730, section 21. The provisions of both are substantially the same, though there is some slight change in the words of the law, but such as does not change the effect of those sections. I will also remark that the act of 1847-8, above referred to, had been repealed, except as to offences committed whilst it was in operation ; prosecutions for which, however, must be conducted under the present law for regulating criminal proceedings.
*On the 13th of December 1848 the first Court was held for the examination of the prisoner upon the charge of embezzling merchandise of the goods and chattels of Word, Ferguson & Barksdale. The examination was put off until January Court 1849, when the prisoner was examined and remanded to be tried for the felony with which he stood charged before the Circuit Superior court of law and chan-cerj for the county of Henrico and city of Richmond.
After this examination had taken place and the prisoner remanded for further trial, it was competent for the attorney for the Commonwealth in the Circuit Superior court of law and chancery of the county of Henrico to prefer an indictment against the prisoner containing one or more counts, or several separate and distinct indictments for the same felony, provided that the same fact, i. e., the same embezzlement, be set forth in each count of the one indictment, or in all the several indictments: and none other but that same fact of embezzlement for which the prisoner had been so examined. He might in each count or in each indictment have charged the merchandise so embezzled as the goods and chattels of different persons other than Word, Ferguson & Barksdale. Mabry’s Case, 2 Va. Cas. 396. But in whatever form he might think proper to present the case to the grand jury, it was certainly his duty to make his election and prefer his indictment within some period of time; and not to detain the prisoner in custody for an indefinite period to await his pleasure or convenience. Nor could he *721 prolong the period by eking out his form of prosecution in driblets; as would be the case if he could be allowed to prefer an indictment at one term charging the merchandise as the property of Word, Eerguson & Barksdale, at another term as the property of Robert M. & Brands Ayres, at another term as the property of some other person, and so on from term to term presenting a new indictment, Varying only from those previously found in the ownership of the property. Bj such means the prisoner would be harassed until the end of time, and would be without redress; because, and this is allowable, as is said, the prisoner was not discharged of the crime at the time of presenting these several indictments, in consequence of the finding and the pendency of a previous indictment for the same fact. That these monstrous consequences may result from such an interpretation of the law, are in my opinion, sufficient to shew that such is not its true construction. Bet us now enquire and see within what time is it that the indictment should be preferred; and from the failing to do which the prisoner is entitled to be discharged from further prosecution for the offence.
The 36th section of the act above referred to is in these words: ‘ ‘Every person charged with felony, and remanded to a Superior court for trial, shall be forever discharged from prosecution for the offence, if there be three regular terms of such Court after his examination without a trial; unless the failure to try him was caused by his insanity; or by the witnesses for the Commonwealth being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or the inability of the jury to agree in their verdict.” This section does not prescribe, in terms, the time within which the indictment is to be found, but as the finding of the indictment necessarily precedes the trial, it follows as a corollary that the law requires that he shall be indicted before the expiration of the third term after his examination ; unless the failure to do so is to be excused upon some ground specified in the law. What are they? One is for the failure of the prisoner to appear according to his recognizance. I think the meaning of *this is a failure to appear at a trial or at a time when a trial should be had upon the indictment. But let it be conceded that it means his failure to appear when the grand jury could have taken cognizance of the indictment. This was at April term 1849, which was the first term that was held after the date of the examination. At that term the prisoner forfeited his recognizance by failing to appear. Then therefore let us pass by this term as one at which the attorney was excusable for not preferring his indictment against the prisoner.
This brings us to the October term 1849. At this term the witnesses for the Commonwealth failed to appear: and although it does not appear, for what cause they failed to appear, yet the record in that respect in the absence of proof to the contrary shews a sufficient reason for excusing the attorney from presenting the indictment at October term 1849. The next term was in April 1850. The witnesses then attended on behalf of the Commonwealth, and an indictment was found by the grand jury, upon which the prisoner was arraigned and plead not guilty; and on his motion the trial was continued until the next term. In this indictment the merchandise is charged as the property of Word, Eerguson & Barksdale, conforming in that respect to the description of the offence for which the prisoner had been examined in the County court. But as before remarked, the attorney could nevertheless have varied the charge as it respected the ownership of the property, and if he had thought proper to do so, might have charged the merchandise as the property of twenty or more different individuals in twenty or more different counts in the same indictment, or in twenty or more different indictments; all of which, whether different counts or different indictments, would have ■ been separate, distinct and wholly foreign from and independent of each other; so much so that no defect, omission or error in one could be supplied or corrected by a reference *to any other of the said counts or indictments ; a principle in pleading which should not be lost sight of in considering this case ; indeed it should be decisive of it. The attorney adopted this course. He presented his indictment, charging the merchandise as the property of Word, Eerguson & Barks-dale, at April term 1850; and as there was no excuse for his not then presenting the very same indictment which was afterwards found at October term 1851, (the fourth term thereafter,) the time from the lapse of which the prisoner claims immunity from prosecution then began to run. That was in my estimation the first term to be counted in favour of the prisoner.
At October term 1850, also, the last mentioned indictment might have been presented. There is no reason assigned for its not being then done. It is true, that at that time the trial was postponed at the instance of the prisoner; but this continuance was a continuance of the trial upon the indictment which had already been found at April term 1850, and had no reference whatever to any other or future indictment, not at that time even in contemplation of the prosecuting attorney or any other person. The prosecutor was then satisfied with +he form of his prosecution, and was full handed with his testimony, as we must infer from his throwing upon the prisoner the necessity of getting a continuance of the cause, and which the prisoner obtained by his own affidavit shewing good cause for the continuance. Being full-handed as to evidence, there appears to be nothing to excuse him from then prefer *722 ring' the second indictment. This, then, I count as the lapse of the second term in estimating the delay, and the prisoner’s claim to exemption from further prosecution. The next term was held in April 1851, when the attorney had all his witnesses before the Court, and had no sort of excuse for not then preferring before the grand jury the second indictment; for it was at this *term that the prisoner' was tried and convicted upon the first indictment, and at this term that the verdict of conviction was set aside, because it had been found out upon the trial of the prisoner that the merchandise which had been embezzled by him was not the property of Word, Ferguson & Barksdale. And thus it appeared that the previous proceedings against the prisoner in the Superior court were wholly ineffectual for the purposes intended, and that the indictment was useless and unavailing, because of the mistake in the indictment as to the ownership of the merchandise. This was the third term, or the last link in the prisoner’s title to be discharged from the crime by reason of the failure to try him at or before the third term after his examination. At this date the Code of 1849 was in force, under the 36th section of which, before recited, the prisoner has a right to claim his discharge.
But much reliance has been placed on the 16th section of chapter 199, Code of 1849,. page 751. That section is in these words: “A. person acquitted of an offence on the ground of a variance between the allegations and the proof of the indictment or other accusation, or upon an exception to the form or substance thereof, may be arraigned again upon a new indictment, or other proper accusation, and tried and convicted for the same offence, notwithstanding such former acquittal.” Now this is no new law; it is an old principle clothed in a new dress. At first it appeared in the form of decisions by this Court, and relates to a defence upon the plea of auterfois acquit. 1 Va. Cas. 164, 232 ; 2 Va. Cas. 89, 111, 273, 345; and 5 Rand. 669. The principle of these cases now assumes the form of a statute law. But, nevertheless, that statute should receive the same construction which the decided cases intended to establish. That statute was not designed to have the effect of repealing that law, which I will call the three term law, a law intended to protect a prisoner from unreasonable *delay, by ensuring him a trial at or before the end of the third term of the Court which should be held after his examination. Under the eighth article of the Bill of Rights of Virginia, a prisoner is entitled to a speedy trial; and this law was intended to secure to him the benefit of this principle. Can it for a moment be supposed that this great and humane article in the fundamental law of the land, is to be disregarded and repudiated in all cases in which, from the mistake, (as is the case here,) the error, whim, conceit or ignorance of an attorney, the prisoner would be enable to escape from punishment, if allowed to enjoy the benefit of this benevolent principle of the Bill of Rights.
Benjamin W. Green was indicted for felony. His trial was not had within the three terms, because there was not time to try him at either of the three terms. Here was no default on the part of the Court, or its officers. The delay resulted not from the want of diligence on the part of the attorney for the Commonwealth, nor from any other cause within the control of man, but altogether from the fact that for want of time the prisoner could not be tried. Yet upon an application to the General court, made on behalf of the prisoner, that Court discharged him from all further prosecution for the crime. 1 Rob. R. 731. This decision accords with the spirit of the Bill of Rights and the laws in relation to criminal prosecutions, and serves to shew that prosecution, conviction and punishment, when brought against the truths set forth and declared in the venerated instrument before referred to, are but as dust in the balance. The intention of the legislature was to deprive the prisoner of the right of pleading in bar of a new prosecution any of the matters specified in the said 16th section; but not to deprive him of any other matter of defence which should arise upon other and independent considerations, such as a failure to indict within the three terms.
It was neither more nor less than a • ^legislative recognition of what has been laid down in Vance’s Case, Barker’s Case, Gibson’s Case, and others to be found in our books of reports, in none of which had the three terms been held subsequent to the Court of examination. And I defy a reference to a single case in which a new indictment had been allowed after the three regular terms at which the indictment could be found had passed by. Cawood’s Case is, I think, a good authority to shew that it could not be done.
I am, for these reasons, in favour of discharging the prisoner from further prosecution.
CONSTITUTIONAL LAW.
I. Adoption of Constitutions.
II. Construction and Interpretation of Constitutions.
1. General Rules.
2. Construction of Particular Provisions.
III. Operation and Effect of Constitutions.
1. The Supreme Law.
2. What Clauses Are Self-Executing'.
3. Effect of Particular Provisions.
IV. Governmental Powers and Functions.
1. Power of Legislature.
a. Plenary unless Restrained.
b. To Pass Retrospective Laws.
(1) In General.
(2) Ex Post Facto Laws.
(3) Bills of Attainder.
(4) Laws Affecting- Vested Rights.
(5) Curative Laws.
c. Encroachment upon Judiciary.
d. Delegation of Power.
(1) To Judiciary.
(2) To Local Authorities.
*723 2. Power of Judiciary.
a. As Distinguished from "Legislative Power.
b. Power of Annulling Statutes.
(1) "When Constitutionality Will Be Considered.
(2) Who May Raise Question.
(3) When Statutes Will Be Annulled.
(4) Effect of Unconstitutionality.
(a) Entire Unconstitutionality.
(b) Partial Unconstitutionality.
3. Power of Executive.
V. Rules Regulating Enactment of Statutes.
1. No Law Shall Embrace More Than One Object.
2. Recording Vote on Journal of House.
VI. Constitutional Guaranties.
1. Trial by Jury in Civil Cases.
2. Rights of Accused in Criminal Cases.
a. Jury Trial.
(1) When Rule Applicable.
(2) Waiver of Right.
b. Speedy Trial.
c. To Be Present at Trial.
d. To Be Confronted with Accusers.
e. To Benefit of Counsel.
f. The Privilege of Silence.
g. Exemption from Being Put Twice in Jeopardy.
h. Exemption from Cruel and Unusual Punish-
ments.
i. Exemption from Excessive Pines.
3. Personal Liberty and Security.
4. Freedom of Speech and of the Press.
5. Equal Protection of Laws.
a. Class Legislation in General.
b. Racial Discrimination.
6. Property Guaranties.
a. Due Process of Law.
(1) In General.
(2) In Judicial Proceedings.
(3) In Taxation Proceedings.
(4) In Condemnation Proceedings.
b. Obligation of Contract Protected.
(1) In General.
(2) What Is Contract within Constitution.
(3) What Amounts to Impairment.
(a) Laws Affecting Substantial Rights.
(b) Laws Affecting Remedies.
(c) Alteration or Repeal of Corporate Charters.
c. Against Taking for Public Use.
VII. The Police Power.
1. Nature and Extent of Power.
2. Subjects for Its Exercise.
3. Limitations upon Its Exercise.
VIII. interstate Commerce.
1. What Constitutes.
2. Power to Regulate Vested in Congress.
3. To What Extent States May Regulate.
4. What Amounts to an Interference with Interstate Commerce.
5. The Interstate Commerce Act.
IX. Taxation.
1. Who May Exercise Taxing Power.
2. What May Be Taxed.
3. Essentials of a Valid Tax.
4. Exemption from Taxation.
5. Local Assessments.
6. Remedy against Illegal Tax.
7. Enforcement of Tax.
Cross References to Monographic Notes.
Autrefois, Acquit and Convict (Jeopardy), appended to Page v. Commonwealth, 26 Gratt. 943. Eminent Domain. Homestead Exemption, appended to Hatorff v. Wellford, Judge, 27 Gratt. 356.
Intoxicating Liquors, appended to Thon v. Commonwealth, 31 Gratt. 887.
Judgments, appended to Smith v. Charlton, 7 Gratt. 425.
Juries, appended to Charlton v. Commonwealth, 20 Gratt. 733.
Municipal Corporations, appended to Danville v. Pace, 25 Gratt. 1.
Municipal, County and State Bonds, appended to DeVoss v. City of Richmond, 18 Gratt. 338.
1. ADOPTION OF CONSTITUTIONS.
Constitutions Are Enacted by Constitutional Conven» tions. — • Constitutions are not enacted by an ordinary legislature, but by a convention of delegates elected by the people. Kamper v. Hawkins, 1 Va. Cas. 20 ; Loomis v. Jackson, 6 W. Va. 613.
Powers of Constitutional Convention Derived from People.-A constitutional convention lawfully convened does not derive its powers from the legislature but from the people ; and being in their nature sovereign, the legislature can neither limit nor restrict the exercise of this power. Loomis v. Jackson, 6 W. Va. 613. See also, Hamper v. Hawkins, 1 Va. Cas. 20.
And the people of the state in their sovereign capacity have the right, in adopting a constitution for their government, to do anything which they are not prohibited from doing by the federal constitution, which was made and ratified by the states themselves. Peerce v. Kitzmiller, 19 W. Va. 564; White v. Crump, 19 W. Va. 583.
Law Which Governs Where a New Constitution Is Adopted. — Where legislation is necessary to give effect to a constitutional provision, laws in existence when a new constitution is adopted, remain the law until legislation is had to enforce the provisions of the constitution which conflict with the old law. Supervisors v. Stout, 9 W. Va. 703 ; Chahoon v. Com., 20 Gratt. 733.
Effect of Adoption upon State Officers. — The incumbents of office at the time of an organic change of government, continuing to hold over after such change (in the absence of a provision of the new constitution, or of an act of the legislature ol the new government giving them such authority), hold by sufferance only and upon a principle of public necessity or convenience, not in virtue of any individual or private right. They cannot set up any claim against the legislature, which has ample power to put an end to their official authority at any time, and appoint others to take their places, subject only to any constitutional restrictions which may plainly appear to exist. Richmond Mayoralty Case, 19 Gratt. 673.
II. CONSTRUCTION AND INTERPRETATION OF CONSTITUTIONS.
1. GENERAL RULES.
Where Text Is Plain, Extrinsic Aid Inadmissible.— When the text of a constitutional provision is plain and unambiguous, the courts in giving construction thereto are not at liberty to search for its meaning beyond the instrument itself. C. & O. Ry. Co. v. Miller, 19 W. Va. 408.
Construed as a Whole. — In construing a constitution the whole is to be examined with a view to arriving at the true intention of each part. State v. Kyle. 8 W. Va. 711.
General Provision Adopting Common Law. — A constitutional provision declaring in general terms the *724 adoption of the common law should he deemed to adopt it, only so far as it accords with existing institutions, and as its principles are applicable to the state of the country and the condition of society. Such a provision will not he construed to oblige the courts to uphold the English doctrine of ancient lights, as this doctrine is not in harmony with our i • ! ; 1 institutions. Powell v. Sims, 5 W. Va. 1, 13 Am. Rep. 629.
Distinction between State and Federal Constitution. — There is an important distinction to he observed between the construction of state and federal constitutions. The constitution of the United States is a source and grant of power to the congress of the United States. It is an enabling, and not a restraining, instrument, and congress can do nothing except what the constitution, either directly or by reasonable construction, authorizes it to do. On the other hand, the constitutions of the states are restraining instruments, and the legislature of the states possess all legislative power not prohibited to them by the constitution. Brown v. Epps, 91 Va. 726, 21 S. E. Rep. 119; Miller v. Com., 88 Va. 618, 14 S. E. Rep. 161. This distinction is well illustrated by the different constructions placed upon grants of power to congress by the federal constitution, and grants of power to the state legislature by the state constitutions. In the first case the grant is construed strictly, as this is the sole source of congressional power. In the second case the grant is merely declaratory of the power already existing in the legislature and is construed liberally. State v. Mc-Allister, 38 W. Va. 485, 18 S. E. Rep. 770; Bridges v. Shallcross, 6 W. Va. 562.
2. CONSTRUCTIONS OP PARTICULAR PROVISIONS.
Meaning of Householder as Used in Virginia Constl-tution.^The terms “householder” and “head of the family,” as used in the constitution of Virginia and statutes passed in pursuance thereof, are convertible terms, and are employed as explanatory the one of the other. They involve the idea of dependence and support, coupled with a moral or legal obligation to support the dependent. Hence, a married woman whose husband lives out of the state but visits her at intervals of two or three years, and occasionally makes her a small remittance of money and who has no children to support, is not a householder or head of a family in contemplation of the constitution and the statutes. Oppenheim v. Myers, 99 Va. 582, 39 S. E. Rep. 218.
Mail Carrier a “Laborer” within Constitution, — A mail carrier is a “laboring man” within the meaning of the clause of the constitution of Virginia which provides that the homestead exemption of a debtor shall not extend to any execution, order, or other process issued on any demand for services rendered by a laboring person. Farinholt v. Luckhard, 90 Va. 936, 21 S. E. Rep. 817.
Provision as to Terms of Courts. — Section 14, article ! 6 of the Virginia Constitution which directs the corporation court to be held as often, and as many days in each month, as may be prescribed, does not : require that the whole term shall be held in the ; same calendar month, And under the act of April 7,1870 (Acts 1869-70, p. 44), which fixes the terms of : the corporation court of Richmond to commence on : the first Monday, and continue so long as the business before the court may require, the court may continue its session from the first Monday in one i month until the first Monday in the next. Chahoon v. Com., 21 Gratt. 822; Sands v. Com., 21 Gratt. 871.
Provision Elevating Corporation Courts. — And the provision of the same section that corporation courts shall have similar jurisdiction which may be given- by law to the circuit courts of the state, was not entitled to restrict, but to enlarge, the jurisdiction of these courts, and to elevate them to the grade and dignity of circuit courts. And it is competent, therefore, for the legislature to give to the corporation courts jurisdiction, to try cases of felony, though the jurisdiction in such cases is takeu away from the circuit courts. Chahoon v. Com., 21 Gratt. 822; Watson v. Blackstone, 98 Va. 618, 38 S. E. Rep. 939. But an act of legislature attempting to give an appeal from the corporation to the circuit court is unconstitutional because in conflict with this provision. Watson v. Blackstone, 98 Va. 618, 38 S. E. Rep. 939.
Provision to Prevent Heredity in Office, — The provision of the bill of rights which declares “that no man or set of men, are entitled to exclusive or separate emoluments or privileges from the community but in consideration of public services, which, not being descendible, neither ought the offices of magistrate, legislator or judge, to be hereditary,” has no application to the private relations of the citizen, nor to the power of the legislature to pass laws regulating the domestic afiairs of the people, but was only intended to provide against heredity in offices. Smoot v. People’s, etc., Assoc., 95 Va. 686, 29 S. E. Rep. 746.
Ill. OPERATION AND EFFECT OF CONSTITUTIONS.
1. THE SUPREME LAW. — The constitution of the United States was adopted by the whole people of the United states and is a grant of powers acquiesced in by the states themselves; hence the constitution and the laws passed by congress in pursuance thereof, are the supreme law of the land. Next in order of supremacy come the state constitutions, the provisions of which are absolutely binding upon all of the departments of the state government. The legislature has no power to pass laws in conflict with either state or federal constitutions. As has been said “the Constitution is law to the lawmakers.” Kamper v. Hawkins, 1 Va. Cas. 20; Case of the Judges, 4 Call 135; Shell v. Cousins, 77 Va. 328; Eckhart v. State, 5 W. Va. 515; Blair v. Marye, 80 Va. 485. See post, “Power of Judiciary— Power to Annul Statutes.”
2. WHAT CLAUSES ARE SELF-EXECUTING.
! General Rule, — Constitutional provisions are self-executing where there is a manifest intention that they should go into immediate effect, and no ancillary legislation is necessary to the enjoyment of a right given or the enforcement of a duty imposed. 6 Am. & Eng. Enc. Law (2d Ed.) 912. See also, White v. Crump, 19 W. Va. 583; Peerce v. Kitzmiller, 19 W. Va. 581; Watkins v. Venable, 99 Va. 440, 39 S. E. Rep. 147; Speidel v. Schlosser, 13 W. Va. 686; Oppenheim v. Myers, 99 Va. 582, 39 S. E. Rep. 218; Chahoon v. Com., 20 Gratt. 733.
: ; : : Provision against Taking Private Property. — Applying this rule, it will be seen that the constitutional provision that private property shall not be taken for public use without just compensation is self-executing. Johnson v. City of Parkersburg, 16 W. Va. 402.
i n Clause Granting Amnesty to Participants in Civil War. — And the provision of the West Virginia constitution that “no citizen of West Virginia, who participated in the war between the government of the United States and a part of the people thereof *725 on either side, shall he held liable civilly or criminally; nor shall his property he seized or sold under final process issued on judgments heretofore recovered, or otherwise, because of an act done according to the usages of civilized warfare, in the prosecution of said war by either of the parties thereto,” operates exproprio vigore. White v. Crump, 19 W. Va. 583.
Provision Conferring Original Jurisdiction on Supreme Court. — On the other hand, the constitutional provision conferring original jurisdiction upon the supreme court in certain specified cases is not self-executing, but the court exercises this jurisdiction, within the constitutional limitation, by virtue of statutory enactments made in pursuance of this provision. Cook v. Daugherty, 99 Va. 590, 39 S. E. Rep. 223; Price v. Smith, 93 Va. 14, 24 S. E. Rep. 474; Prison Association v. Ashby, 93 Va. 667, 25 S. E. Rep. 893; Gresham v. Ewell, 84 Va. 784, 6 S. E. Rep. 134; Page v. Clopton, 30 Gratt. 417.
Clause Allowing Homestead. — And the provision of the Virginia constitution allowing a homestead exemption is not self-executing, but is carried into effect by ch. 178 of the Code. Oppehheim v. Myers, 99 Va. 582, 39 S. E. Rep. 218. See also, Speidel v. Schlosser, 13 W. Va. 686. As to other provisions which are held not self-executing, see Chahoon’s Case, 20 Gratt. 733; Watkins v. Venable, 99 Va. 440, 39 S. E. Rep. 147.
3. EFFECT OF PARTICULAR PROVISIONS.
First Ten Amendments to Federal Constitution. — The first ten amendments to the United States constitution have reference solely to the powers exercised by the United States government, and do not apply to the powers exercised by the state governments. So. Exp. Co. v. Walker, 92 Va. 59, 22 S. E. Rep. 809; Baker v. Wise, 16 Gratt. 139.
Application of Bill of Rights to Convicts. — The bill of rights, though made a part of the present constitution, has the same force and authority, and no more, than it always had. And the principles which it declares have reference to freemen, and not to convicts in the state penitentiary. Ruffin v. Com., 21 Gratt. 790.
Provisions Applicable to Officers Chosen under It.— The clause of the Virginia constitution which provides among other things, that a mayor shall be chosen by the electors of every city, applies only to a mayor to be chosen under the constitution, at and after the time therein prescribed for the purpose; and not to one appointed to perform the duties of mayor before one could be chosen to enter upon the duties of the office under the constitution. Richmond Mayoralty Case, 19 Gratt. 673.
And a provision in a state constitution that no person shall be eligible as a juror who is not entitled to vote and hold office, applies only to disabilities imposed by the instrument makingit, and not to those imposed by the fourteenth amendment to the United States constitution. Sands v. State, 21 Gratt. 871.
Clause Requiring Court to Decide A11 Points on Record. — The clause in the constitution of West Virginia requiring the supreme court of appeals to “decide every point arising upon the record, and give its reason therefor in writing” is directory and does not affect the common-law rule of res judi-cata. Hall v. Bank of Virginia, 15 W. Va. 323; Henry v. Davis, 13 W. Va. 230.
IV. GOVERNMENTAL POWERS AND FUNCTIONS.
1. POWER OF LEGISLATURE.
a. Plenary unless Restrained. — See post, “The Police Power.”
The legislature of the several states have plenary legislative powers, except where it is restricted by the constitution of the state, or of the United States. Prison Assoc. v. Ashby, 93 Va. 667, 25 S. E. Rep. 893.
For example, the legislature may remove the seat of the state government when they think that the state will be pecuniarily benefited by the removal, and the statute authorizing the removal is not void because showing on its face that the legislature was induced to act by reason of pecuniary considerations, and not by their wisdom and discretion. Slack v. Jacob, 8 W. Va. 612.
But, after the passage of a bill in the legal and constitutional form, by both houses of the legislature, and the transmission of it to the governor in the manner provided in the constitution, the legislature has exhausted its power over it, and it cannot recall the bill by resolution and revest themselves with power to further act upon it. Wolfe v. McCaull, 76 Va. 876.
Legislature No Power to Change Qualifications of Voters. — The right of suffrage is derived from the constitution of the state, and to it we look to ascertain who may, or who may not, vote. The legislature cannot, directly or indirectly, prescribe any qualifications additional to those found in the constitution, and, as no qualification is prescribed by the constitution, none can be required by the legislature. The sole function of the legislature, with respect to the exercise of the right of suffrage, is to provide the method of voting, and to this end it may adopt reasonable rules and regulations. But a regulation which virtually establishes a test of qualifications of the voter, additional to those prescribed in the constitution, is unconstitutional, and therefore void. Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483.
Legislature May Declare Cases in Which an Office Shall Be Deemed Vacant. — Where no provision is made for that purpose iu the constitution, the legislature may declare the cases in which any office shall be deemed vacant. Gallalee v. Calvert, 1 Va. Dec. 661, Va. Law J. 1884, p. 418; Vaughan v. Johnson, 77 Va. 300.
b. To Pass Retrospective Laws.
00 In General.
Retrospective Laws Valid unless Prohibited. — The legislature may give a statute retrospective operation unless it violates that provision of the federal constitution relating to ex post facto laws and the obligation of contracts, or unless it is repugnant to some express provision, of the state constitution, or unless it interferes with vested rights of property, so as not to come within the limits of the law-making power. Independently of these exceptions, retrospective laws are within the scope of the legislative authority and will not be interfered with by the judiciary. Town of Danville v. Pace, 25 Gratt. 1. 18 Am. Rep. 663. Seeped, “Obligation of Contract Protected.”
Statutes Construed Prospectively. — A statute will not be construed to have a retroactive effect unless there is something on the face of the act showing beyond a doubt that this was the purpose of the legislature. Merchants’ Bank v. Ballou, 98 Va. 112. 32 S. E. Rep. 481; Myers v. Com., 90 Va. 785, 20 S. E. Rep. 152.
*726 Applying this rule, a provision in the constitution that “the legislature may authorize municipalities to lay taxes” is not to he construed as retrospective. Douglass v. Town of Harrisville, 9 W. Va. 162, 27 Am. Rep. 548.
Imposing Qualification for Office Holders. — No one has a natural or inalienable right to an office; all who seek it must accept the office with all the restrictions imposed by law. Therefore a law providing that certain officers shall take a test oath of loyalty to the state is not retroactive and is constitutional. Ex parte Stratton, 1 W. Va. 305; Randolph v. Good, 3 W. Va. 551.

(9) Ex Post Eaeto Laws.

What Laws Are Ex Post Facto within the Meaning of the Constitution. — The states are expressly inhibited by the federal constitution from passing <ex post facto laws. Laws fall within the meaning of this inhibition when they impose a punishment for previous -acts which were not punishable at all when committed or not punishable to the extent or in the manner prescribed, or when they change the rules of evidence so that less or different testimony is required to convict. Danville v. Pace, 25 Gratt. 1; Ex parte Hunter, 2 W. Va. 122; Ex parte Quarrier, 4 W. Va, 210; Turner v. Turner, 4 Call 234.
Always Relate to Crimes and Punishments. — Ex post ■facto laws always relate to penal and criminal proceedings, and never to civil proceedings. Hence, a -law requiring a person who has alread’y qualified as an attorney at law to take an oath before he can •continue to practice at law, is not an ex post facto law. Ex parte Hunter, 2 W. Va. 122; Ex parte Quarrier, 4 W. Va. 210; Perry v. Com., 3 Gratt. 632.
Imposition of Increased Punishment for Second Of-fence.-vA statute imposing a greater punishment for -a second offence, than for the first offence of the same character, is not unconstitutional as being an ex post facto law. Rand v. Com., 9 Gratt. 738.
. Rules of Practice May Be Changed. — And it is always competent for the legislature to change the rules of practice without violating this inhibition. Hence, a statute changing the mode of summoning ■and making up juries in trials for felony, applies to ■all cases tried after the act, though the offence was committed, and the examining court had passed .upon the case, before the passage of the act. Perry v. Com., 3 Gratt. 632.
And though an offence committed before the Code of 1849 went into operation, must, so far as the question of guilt, degree of crime, quantum, of punishment and rules of evidence are concerned, be governed by the law in force at the time the offence was committed, yet upon the question of the prisoner’s right tobe discharged from the failure to try him, arising after the Code went into operation, it must be governed by the Code. Adcock v. Com., 8 Gratt. 661.
Law -Not Made Ex Post Facto by Charges in Indictment. — The fact that an indictment charges the commission of an offence both before and after the statute making it an offence was passed is not sufficient to make the law ex post facto, but the part of the indictment charging the offence before the passage of the law making it an offence, will be disregarded. Morgan v. Com., 98 Va. 812, 35 S. E. Rep. 448.
(cf) Bills of Attainder. — The states are also forbidden by the federal constitution to pass bills of attainder. A statute requiring a party to take a certain oath therein prescribed as prerequisite to a rehearing in the matter of a judgment suffered by default, in attachment, called the “suitor’s test oath,” and in effect to purge himself from all complicity with the rebellion, is in the nature of a bill of pains and penalties, and unconstitutional, as a bill of attainder and ex post facto law. Kyle v. Jenkins, 6 W. Va. 371; Peerce v. Carskadon, 6 W. Va. 383; Boss v. Jenkins, 7 W. Va. 284.
And an act of congress providing for the forfeiture of land for the nonpayment of taxes, as a penalty upon persons who were engaged in the rebellion against the United States, is a legislative conviction and punishment without trial and is a bill of attainder and void. Martin v. Snowden, 18 Gratt. 100.
(4) Laws Affecting Vested Bights. — Legislation cannot divest or impair rights of property already vested, nor the right of alienation, nor any of the essential incidents to the estate in such property. Johnson v. Sanger (W.Va.), 38 S. E. Rep. 645. Anda legislative interpretation changing title founded on existing statutes is subject to every objection which lies to an ex post facto law, since it would destroy vested rights. Turner v. Turner, 4 Call 234.
Husband's Right to Curtesy. — But a husband’s right to curtesy initiate, and his right to reduce into possession his wife’s choses in action, are not vested rights, and they may be impaired or taken away by legislation. Alexander v. Alexander, 85 Va. 353, 7 S. E. Rep. 335, 1 L. R. A. 125; Thornburg v. Thornburg, 18 W. Va. 522; Wyatt v. Smith, 25 W. Va. 813.
No Vested Right in Statutes. — And an act authorizing state bondholders to invest bonds in tax-receivable coupons does not create in the bondholder any vested right, so as to prevent the repeal of the statute, before the acceptance by them of its benefits. Paulsen v. Rogers, 32 Gratt. 654. See post, “Property Guaranties” — “Due Process of Law”— “Obligation of Contract Protected.”

(s) Curative Laws.

Statutes Validating Contracts Void for Usury. — Legislative acts validating invalid contracts will be sustained, when these acts go no further than to bind the party by a contract which he has attempted to enter into; but which was invalid by reason of some personal inability on his part to make it, or through neglect of some legal formality, or in consequence of some ingredient in the contract forbidden by law. Thus, the defence of usury, being in the nature of a penalty or forfeiture, may at any time be taken away by the legislature in respect of previous as well as subsequent contracts, without trenching upon any vested rights. Town of Danville v. Pace, 25 Gratt. 1, 18 Am. Rep. 663; Ewell v. Daggs, 108 U. S. 143; Bosang v. Iron Belt, etc., Assoc., 96 Va. 119, 30 S. E. Ben. 440; Smoot v. People’s, etc., Ass’n, 95 Va. 686, 29 S. E. Rep. 746.
Legitimating Children. — And where the legislature passed a law, declaring that the issue of a marriage deemed null in law should nevertheless be legitimate, it was held to legitimate children born before the act, so as to entitle them to share the estate, and as next of kin to entitle them to administration, where the father had died after the act took effect. Stones v. Keeling, 3 H. & M. 228, and note ; Rice v. Efford, 3 H. & M. 225.
Curing Defective Acknowledgment. — But a statute which attempts to validate deeds, made for the benefit of a corporation, which have been acknowledged before a notary public or other officer who was a stockholder in such corporation, is unconstitutional and void so far as it affects the lien of a judgment recovered and.docketed against the grantors in such deeds prior to the approval of the act. *727 Merchants’ Bank v. Ballon, 98 Va. 112, 32 S.E.Rep. 481.
Void Judgment Cannot Be Validated. — So, also, where persons without authority to act as judges hear and decide causes, their judgment is of no effect, and it cannot be validated by a subsequent statute, as this would be taking one man’s property from him and giving it to another. Griffin v. Cunningham, 20 Gratt. 31.
Curing Failure to Exercise Condition Precedent.— Where the legislature has given a county or municipality authority to subscribe to stock of a corporation, and through mistake or otherwise, the conditions precedent to the purchase are not complied with by the county or municipality, the legislature cau cure this defect by subsequent legislation. Redd v. Supervisors, 31 Gratt. 695 ; Supervisors v. Randolph, 89 Va. 614, 16 S. E. Rep. 722 ; Bell v. Farmville, etc., R. Co., 91 Va. 99, 20 S. E. Rep. 942. See post, ‘‘Obligation of Contract Protected.”
C. ENCROACHMENT UPON JUDICIARY.
Usurping Judicial Functions. — The legislature must not usurp the functions of the judiciary. Thus, a statute directing the assessor and county clerk in making out the land-books, to disregard all changes made by the county court in the value of any tract of land, is unconstitutional and void. Ex parte Low, 24 W. Va. 620; Seibert v. Linton, 5 W. Va. 57. And an act of legislature purporting to legalize an order of the board of supervisors opening a road is void, because it attempts to determine a question essentially judicial. Seibert v. Binton, 5 W. Va. 57.
But a statute allowing an appeal from a decision of a board of public works to the circuit court is not in violation of the constitutional provision requiring legislative, executive and judicial functions to be kept separate. Wheeling Bridge, etc., R. Co. v. Paull, 39 W. Va. 142, 19 S. E. Rep. 551.
New Trials. — The legislature has no power to grant new trials or rehearings, or to authorize the opening of a judgment previously rendered, after that remedy under the general law has expired. A statute authorizing the opening of judgments rendered since an anterior date impairs vested rights and infringes on the judicial department. Ratcliffe v. Anderson, 31 Gratt. 105; Peerce v. Kitzmiller, 19 W. Va. 564; Griffin v. Cunningham, 20 Gratt. 31; Teel v. Yancey, 23 Gratt. 691; Marpole v. Cather, 78 Va. 239; Martin v. South Salem Baud Co., 94 Va. 28, 26 S. E. Rep. 591; White v. Crump, 19 W. Va. 583.
Setting Aside Judgments — The legislature has no power to set aside a judgment, or to empower a court to do so, rendered before the passage of the act, no matter how erroneous the judgment may be. Arnold v. Kelley, 5 W. Va. 446; Ratcliffe v. Anderson, 31 Gratt. 105; Marpole v. Cather, 78 Va. 239; Marshall v. Cheatham, 88 Va. 81, 13 S. E. Rep. 308.
Statutes Authorizing Review of the Decisions of Military Court. — The legislature has no authority to confer upon the court the power to set aside, annul or affirm “as to the court may seem proper” the decisions of a court established by the military authorities under the reconstruction laws of congress, even though the exercise of such power be limited to the first term of the newly-constituted court. Griffin v. Cunningham, 20 Gratt. 31; Teel v. Yancey, 23 Gratt. 691.
Forfeiture without Trial. — The legislature has constitutional power to pass laws for the forfeiture of any vessel employed in violating the laws of the state, without regard to the guilt or innocence of the owner of such vessel. Boggs v. Com., 76 Va. 989.
No Power to Nullify Judgment by Pardon. — In Com. v. Caton, 4 Call 5, the supreme court held void a resolution adopted by the state senate, but not concurred in by the lower house, whereby a pardon was sought to be granted to certain parties convicted of treason.
Compelling Trial of Causes by Allowing Mandamus.— The supreme court of appeals has no jurisdiction, whether under the constitution or the statute, to issue a mandamus to a judge of a circuit court to compel him to try a cause depending in his court. Barnett v. Meredith, 10 Gratt. 650.
Statute Allowing Removal. — But a statute, directing that on motion on twenty days’ notice by any party, any suit or proceeding pending in a corporation court shall be removed to the circuit court having jurisdiction of the corporation, is not unconstitutional, and mandamus is the proper remedy for a refusal to remove. Town of Danville v. Blackwell, 80 Va. 38.
d. Delegation oe Power.
(1) To the Judiciary . — The legislature cannot delegate its power to the judiciary, as such a delegation is impliedly prohibited by the separation of powers in the constitution. Applying this rule, a statute attempting to confer upon the circuit courts the power to “supersede, revoke or annul” an ordinance of a city upon the petition of ten taxpayers residing in said city, is unconstitutional for the reason that such power is legislative, and, therefore forbidden to be exercised by the courts. Shepherd v. City of Wheeling, 30 W. Va. 479, 4 S. E. Rep. 635.
But a statute conferring on courts functions in their nature judicial and administrative, although in furtherance of the legislative department of the state government, is constitutional and valid. In re Town of Union Mines, 39 W. Va. 179, 19 S. E. Rep. 398 ; Elder v. Central City, 40 W, Va. 322, 21 S. E. Rep. 738.
And the legislature may authorize the appointment of additional justices of the peace by the county court if the court shall be of the opinion th at others are needed. Ex parte Bassitt, 90 Va. 679, 19 S. E. Rep. 453.
(2) To Local Authorities
Local Option.--The legislature has the power to delegate to the voters of a particular district or county the power to adopt a .statute. Thus, the question of authorizing the sale of liquor within a given locality may be left to the determination of its voters. Savage v. Com., 84 Va. 619. 5 S. E. Rep. 565.
Conditional Legislation. — And an act providing for the establishment of a system of free schools in a county may be made conditional upon its approval by the people of the county. Bull v. Read, 13 Gratt. 78. See also, Kuhn v. Board of Ed., 4 W. Va. 499; Neale v. County Court, 43 W. Va. 96, 27 S. E. Rep. 373; Savage v. Com., 84 Va. 621, 5 S. E. Rep. 565; Ex parte Bassitt, 90 Va. 682, 19 S. E. Rep. 453; Langhorne v. Robinson, 20 Gratt. 665; Gilkeson v. Frederick Justices, 13 Gratt. 584; Goddin v. Crump. 8 Leigh 120; City of Richmond v. Richmond, etc., R. Co. 21 Gratt. 604; Rutter v. Sullivan, 25 W. Va. 427.
The legislature has the exclusive power to create independent school districts, without the assent of the citizens residing therein, and to authorize by law the election of a board of education for such district, by the qualified voters resident therein, and to give such board power to make the annual levies for buildings and the support of schools therein. Kuhn v. Board of Ed., 4 W. Va. 499; Pumphrey v. Brown, 77 Va. 569.
*728 2. POWER OF JUDICIARY.
a. As Distinguished prom legislative Power.— It is the province of courts to decide what the law is, and determine its application to particular facts in the decision of causes; the province of the legislature is to decide what the law shall he in the future. Shepherd v. City of Wheeling, 30 W. Va. 479, 4 S. E. Rep. 635. The judiciary alone has power to determine whether or not a statute is in harmony with the constitution, and to declare that statutes which conflict with the constitution shall he void. Crenshaw v. Slate River Co., 6 Rand. 245.
h. Power op Annulding Statutes.
(1) When Constitutionality Will Be Considered.
Law Must Be Directly Brought in Question. — A court will not pass upon the constitutionality of a statute, unless a decision upon that very point is necessary to the determination of the case. Edgell v. Conaway, 24 W. Va. 747.
Need Not Be Specially Pleaded. — The unconstitutionality of a law or an ordinance of a municipal corporation need not he specially pleaded. The question may he raised hy a general demurrer in the trial court, and the error assigned for the first time in the supreme court. Adkins v. City of Richmond, 98 va. 91, 34 S. E. Rep. 967.
On Appeal. — when the constitution of the state requires an indictment to conclude in certain forms and words, an indictment is not good unless it concludes in the exact language of the constitution. And a prisoner, hy failing to object at the trial, does not thereby waive the objection, hut, the right being a constitutional one, objection may he made hy the prisoner for the first time on appeal. Lemons v. State, 4 W. Va. 755.
One who has restrained an oyster inspector from collecting fees under a statute, on the ground that the statute is unconstitutional, cannot dispute the jurisdiction of the supreme court of appeals, to which an appeal maybe taken in all cases involving the constitutionality of a statute. Thomas v. Rowe; 3 Va. Dec. 113, 22 S. E. Rep. 157.

(2) Who May Baise Question.

Party Interested. — The question must he raised, in all cases, hy a party who is affected hy the law in question, as courts cannot he empowered hy the legislature to pass upon the constitutionality or validity of a legislative act or city ordinance as a general and abstract question; the question must he whether the act or ordinance furnishes the rule to govern the particular case before the court. Shepherd v. City of Wheeling, 30 W. Va. 479, 4 S. E. Rep. 635.
Joint Suit to Test Constitutionality. — One of a number of parties affected hy law may file a hill in behalf of himself and all the other parties similarly situated, to test the constitutionality of the law and the propriety of proceedings under it. Bull v. Read, 13 Gratt. 78; McClung v. Livesay, 7 W. Va. 333; Corrothers v. Board of Education, 16 W. Va. 540; Christie v. Malden, 23 W. Va. 670; Williams v. County Court, 26 W. Va. 500; City of Richmond v. Crenshaw, 76 Va. 940; Roper v. McWhorter, 77 Va. 216; Blanton v. Southern, etc., Co., 77 Va. 339; Shen. Valley R. Co. v. Supervisors, 78 Va. 276; Buffalo v. Town of Pocahontas, 85 Va. 225, 7 S. E. Rep. 238; Lynchburg, etc., Ry. Co. v. Dameron, 95 Va. 546, 28 S. E. Rep. 951; Redd v. Supervisors of Henry County, 31 Gratt. 698; Eyre v. Jacob, 14 Gratt. 424; Johnson v. Drummond, 20 Gratt. 428; Douglass v. Town of Harrisville, 9 W. Va. 166; Kuhn v. Board of Education, 4 W. Va. 511; Oshurn v. Staley, 5 W. Va. 85; Doonan v. Board of Education, 9 W. Va. 246; C. & O. Ry. Co. v. Miller, 19 W. Va. 408; Perkins v. Seigfried, 97 Va. 444, 34 S. E. Rep. 64; Coffman v. Sangston, 21 Gratt. 263.

(8) When Statutes Will Be Annulled.

AnnuIIment a Delicate Task. — To declare a legislative enactment void is the exercise of a judicial function of the most delicate character, never to he done except upon the clearest conviction of the unconstitutionality of the law. Helfricks’ Case, 29 Gratt. 847; Bridges v. Shallcross, 6 W. Va. 570; Com. v. Byrne, 20 Gratt. 175; Slack v. Jacob, 8 W. Va. 627; Eyre v. Jacob, 14 Gratt. 422, and foot-note.
Statute Must Conflict with Constitution. — In determining the constitutionality of a statute, the courts have nothing to do with the question whether or not the legislation contained in its provisions is wise and proper. The only question they have to deal with is one of power. If the statute, the validity of which is attacked, is not in conflict with the state or federal constitution, the courts have no power to declare it invalid, however well satisfied they may he that it is unwise or vicious legislation. Prison Assoc, v. Ashby, 93 Va. 667, 25 S. E. Rep. 893; Osburn v. Staley, 5 W. Va. 85, 13 Am. Rep. 640; Slack v. Jacob, 8 W. Va. 612; State v. Workman, 35 W. Va. 367, 14 S. E. Rep. 9, 14 L. R. A. 600; Peel Splint Coal Co, v. W. Va., 36 W. Va. 802, 15 S. E. Rep. 1000, 17 L. R. A. 385.
[Inconstitutionality Hust Clearly Appear. — The unconstitutionality of a statute must he clear and manifest before a court will declare it void; and where any reasonable doubt exists as to its constitutionality it will he upheld. Gutman v. Virginia Iron Co., 5 W. Va. 22; Com. v. Moore, 25 Gratt. 951; Osburn v. Staley, 5 W. Va. 85, 13 Am. Rep. 640; Bridges v. Shallcross, 6 W. Va. 562.
It is the duty of the court to uphold a statute when the conflict between it and the constitution is not clear, and the implication, which must always exist, that no violation has been intended hy the legislature, may .require it, in some cases, where the meaning of the constitution is in doubt, to lean in favor of such a construction of the statute as might not at first view seem most obvious and natural. Where the meaning of the constitution is clear, the court, if possible, must give the statute such a construction as will enable it to have effect. Slack v. Jacob, 8 W. Va. 627; State v. Ellison (W. Va.), 38 S. E. Rep. 574; State v. Workman, 35 W. Va. 367, 14 S. E. Rep. 9.
In C. & O. Ry. Co. v. Miller, 19 W. Va. 408, the rule is laid down as follows: “When doubts arise in the minds of the court as to the interpretation to be put upon the provision of a constitution, if after a careful examination of the provision, and after all the lights, to which it is proper to resort, have been made use of for the purpose of ascertaining its true meaning, the court construing the provision still has doubts whether the legislation complained of is an infraction of the instrument, the court, upon such doubts alone, is bound to pronounce in favor of the validity of the act. The court does not, in such case, sustain the validity of the act, because other persons or courts have doubted its constitutionality, but because the court itself, after using all the aids that it has a right to use, in its own mind acting for itself and upon its own responsibility, is not able to say beyond a reasonable doubt that the act is unconstitutional. The presumption is in favor of the constitutionality of the act, and in a doubtful case that presumption is sufficient to sustain the act.”
*729 Statutes — Prima Facie Valid. — Any legislative act which does not encroach upon the powers apportioned to other departments of the government, losing prima facie valid, must l>e enforced, unless restrictions upon the legislative authority can be pointed out in the constitution, and the case shown to come within them. State v. Dent, 25 W. Va. 19; State v. Swann, 46 W. Va. 128, 33 S. E. Rep. 89; State v. McAllister, 38 W. Va. 485, 18 S. E. Rep. 770; Virginia, etc., Co. v. McClelland, 98 Va. 424, 36 S. E. Rep. 479.
While the legislature is governed by the spirit of the constitution, the courts cannot declare an act invalid unless its invalidity is placed beyond a reasonable doubt. A reasonable doubt must be solved in the favor of the legislative action, and the act be sustained. The court must be guided by the express words of the constitution, and not by its supposed spirit. Whenever an act of the legislature can be so construed as to avoid conflict with the constitution and give it the force of a law, such construction will be adopted by the courts. Osburn v. Staley, 5 W. Va. 85.
And where two constructions may be given a statute, one of which is clearly within the legislative power and the other beyond it, the legislature will be held to have intended to do that which it had a right to do, and not that which was beyond its power. Martin v. South Salem Land Co., 94 Va. 28, 26 S. E. Rep. 591.
State Court May Declare Law in Conflict with Federal Constitution. — A state court has jurisdiction to decide that a provision of the state constitution is in conflict with the constitution of the United States. Homestead Oases, 22 Gratt. 266.
(4) JSffect of Unconstitutionality.
(a) Entire Unconstitutionality.
Renders Statute Void. — Where a law is totally in conflict with the constitution the law is void in entirety, and it is the duty of the court to so declare it. Robertson v. Preston, 97 Va. 296, 33 S. E. Rep. 618; Black v. Trower, 79 Va. 128; Trimble v. Com., 96 Va. 818, 32 S. E. Rep. 786; Isaacs v. City of Richmond, 90 Va. 30, 17 S. E. Rep. 760; Hamper v. Hawkins, 1 Va. Cas. 20.
Unconstitutionality as Ground for Injunction. — An allegation in a bill for an injunction that the act complained of is being committed under an unconstitutional statute, will not, of itself, confer jurisdiction on a court of equity to grant the relief, where the other allegations do not make a case fo,r such relief. Thomas v. Rowe, 2 Va. Dec. 113, 22 S.E. Rep. 157.
(b) Partial Unconstitutionality. — Where a part of an act is unconstitutional, that fact does not authorize the courts to declare the other provisions of the act void, unless they are so connected in subject-matter, depending on each other, operating for the same purposes, or otherwise so connected in meaning, that it cannot be presumed that the legislature would have enacted the one without the other. If the act attempts to accomplish two or more objects, and is unconstitutional as to one, it may still be complete in all respects and valid as to the other; but if the purpose of the act is to accomplish a single object only, and some of its provisions are void, the whole must fail, unless the remainder of the act is sufficient to effect the object, without the aid of that which is invalid. Robertson v. Preston, 97 Va. 296, 33 S. E. Rep. 618; Black v. Trower, 79 Va. 123; Trimble v. Com., 96 Va. 818, 32 S. E. Rep. 786; Pearson v. Supervisors, 91 Va, 322, 21 S. E. Rep. 483; Eckhart v. State, 5 W. Va. 515. See. in this connection, post, “Rules Regulating Enactment of Statutes.”
3. POWER OP EXECUTIVE.
Pardoning Power. — The power to reprieve is vested in the governor by the constitution, in all cases of felony where the necessity therefor exists. He is the sole judge of such necessity, and his conclusions are not reviewable by the courts, but are binding on the other departments of government. State v. Hawk (W. Va.), 34 S. E. Rep. 918. And the pardoning power is vested solely in the executive. The legislature has no power to grant a pardon to a person convicted of crime. Com. v. Caton, 4 Call 5.
Approval of Legislative Acts. — Article 5 of the Constitution of West Virginia provides that “the legis-live, executive and judicial departments shall be separate and distinct, so that neither shall exercise powers properly belonging to either of the others; nor shall any persons exercise the powers of more than one of them at the same time.” It follows from this section that the governor has no legislative function, and his approval of an act, which is to take effect not at its passage but after the expiration of ninety days, relates back to the date of its passage. State v. Mounts, 36 W. Va. 179, 14 S. E. Rep. 407.
No Power to Remove Justice of Peace. — The executive has no power to remove a justice of the peace fromoiilce; but he may be removed by the judgment of a superior court of law. Edmiston v. Campbell, 1 Va. Cas. 16.
Taking Care That the Laws Are Faithfully Executed. —The constitutional provision that the governor shall take care that the laws be faithfully executed, grants no power other than that implied in the imposition of the duty, and this provision does not generally, if ever, make it the duty of the governor to execute the laws. But, as the language implies, it makes it his duty to observe the manner in which the different officers of the government exercise their proper functions and execute the laws committed to their charge. Shields v. Bennett, 8 W. Va. 74.
V. RULES REGULATING ENACTMENT OF STATUTES.
1. NO LAW SHALL EMBRACE MORE THAN ONE OBJECT.
The Constitutional Provision — The state constitutions usually contain a provision to the effect that no act passed by the legislature shall embrace more than one obj ect which shall be expressed in its title; and that no act shall be amended or repealed with reference to its title, but the act revived or the section amended shall be re-enacted and published at length. See Va. Const., art. 5, § 15; W. Va. Const., art. 6, § 30; Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930; Cahoon v. Town of Iron Gate, 92 Va. 367, 23 S. E. Rep. 767.
Rationale of Rule. — The object of such a provision is to prevent the members of the legislature from being misled by the title of law; to prevent the use of deceptive titles for vicious legislation: to prevent the practice of bringing together in the one bill for corrupt purposes subjects diverse and dissimilar in their nature, and having no necessary connection with each other; and to prevent surprise or fraud in legislation by means of provisions in bills of which the title gives no intimation. On the other hand, it is not intended to obstruct honest legislation, or to prevent the incorporation into a single act of the entire statutory law of one general subject. It was not designed to embarrass legislation *730 by compelling- the multiplication of laws hy the passage of separate acts on a single subject. It is therefore to be liberally construed and treated, so as to uphold the law if practicable. Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357; Cahoon v. Iron Gate, 92 Va. 367, 23 S. E. Rep. 767; Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930; Fidelity, etc., Co. v. Shenandoah, etc., R. Co., 86 Va. 1, 9 S. E. Rep. 759; Pearson v. Supervisors, 91 Va. 322, 21 S. E. Rep. 483; Shields v. Bennett, 8 W. Va. 74; Supervisors v. McGruder, 84 Va. 828, 6 S. E. Rep. 232.
When Rule Is Satisfied. — It may be stated as a general rule that the title of an act will be sufficient if the things authorized to be done, though of a diverse nature, may be fairly regarded as in furtherance of the object expressed in the title. All that is required is that the subjects embraced in the statute, but not specified in the title, are congruous, and have natural connection with, or are germane to, the subject expressed in the title; .and the constitution is to be liberally construed so as to uphold the law, if practicable. Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357; Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930; State v. Mines, 38 W. Va. 125, 18 S. E. Rep. 470; State v. Brookover, 38 W. Va. 141, 18 S. E. Rep. 476; McEldowney v. Wyatt, 44 W. Va. 711, 30 S. E. Rep. 239; Fidelity, etc., Co. v. Shen., etc., R. Co., 86 Va. 1, 9 S. E. Rep. 759; Com. v. Drewry, 15 Gratt. 1; Anderson v. Com., 18 Gratt. 295; Lescallett v. Com., 89 Va. 878, 17 S. E. Rep. 546; Prison Assoc. v. Ashby, 93 Va. 667, 25 S. E. Rep. 893; Ingles v. Straus, 91 Va. 209, 21 S. E. Rep. 490.
The title need not be a detail or index or abstract of the contents of the act. The act may include numerous provisions which are reasonably indicated by the title. The generality of the title is therefore no objection to it, so long as it is not made a cover to legislation incongruous in itself, and which by no fair intent can be considered as having a necessary and proper connection. State v. Mines, 38 W. Va. 125, 18 S. E. Rep. 470; State v. Brookover, 38 W. Va. 141, 18 S. E. Rep. 476. For example, a statute, having as its object the suppression of gambling upon the speed-or endurance of animals, may make unlawful, and provide for punishing, every device for making, receiving, forwarding or registering any bet or wager upon the speed or endurance of animals. Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930.
Illustrations of the Rule. — A statute entitled “An act to prevent poolselling and so forth, upon the result of any trials of speed of any animals or beasts taking place without the limits of the commonwealth,” and which makes it unlawful for any person, association or corporation, by any means or device, to make any bet or wager, or to receive, record, register or forward, purport or pretend to forward, any money, thing or consideration of value to be bet or wagered upon the result of any trials of speed, power of endurance, or skill of animals which is to take place beyond the commonwealth, conflicts with this provision as it prohibits acts which are not included in the term “poolsell-ing.’’ Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930.
And where the object of a statute as expressed in its title is to secure the wages of certain employees of railway and other corporations, and it contains a provision securing liens to persons furnishing iron, fuel, and other supplies, such provision is not within the object of the act as stated in the title, and is therefore inoperative. Fidelity, etc., Co. v. Shen., etc., R. Co., 86 Va. 1, 9 S. E. Rep. 759.
But an act, the title of which is “An act to provide a new charter for the Iron Belt Building and Loan Association,” is not unconstitutional on tlie ground that its title embraces more than one object, or that the title is broader than the act, in so far as it validates legal contracts previously made by the association. This provision is germane to the title, and in furtherance of the object expressed therein. Bosang v. Iron Belt, etc., Assoc., 96 Va. 119, 30 S. E. Rep. 440.
The title to an act which imposes a tax sufficiently defines the object to which the tax is to be applied when it declares it to be “to obtain revenue. ” Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357.
And where an appropriation is mentioned in the title as the object of the act, this is sufficient to sustain the validity of the provision indicating an officer on whose requisition the appropriation shall be made. Shields v. Bennett, 8 W. Va. 74.
Effect Where Statute Includes Several Hatters. — If the title is so framed as to include only certain matters, the other legislation beyond the matters named is inoperative, although it might with propriety have been embraced in the same act with the matters indicated by the title, if the title had been more comprehensive. Supervisors v. Alexandria, 95 Va. 469, 28 S. E. Rep. 882; Martin v. So. Salem Land Co., 94 Va. 28, 26 S. E. Rep. 591; Cahoon v. Town of Iron Gate, 92 Va. 367, 23 S. E. Rep. 767; Fidelity, etc., Co. v. Shen. R. Co., 86 Va. 1, 9 S. E. 759; Shields v. Bennett, 8 W. Va. 74. This rule, however, does not operate to make a statute wholly void when any part of the act is indicated by the title, and such part is capable of being separated from the part not so indicated, and is left complete in itself, and capable of being executed as the will of the legislature. Bd. of Supervisors v. McGruder, 84 Va. 828, 6 S. E. Rep. 232: Shields v. Bennett, 8 W. Va. 74. See ante, “Effect of Unconstitutional! ty. ”
The Rule as Applied to Amendatory Acts. — The rule as to the title and matters of an original act applies to an amendatory act. If the title of the first act is broad enough to cover the matters embraced by the amendatory act, it is unnecessary to enquire whether the title of the amendatory act would itself be sufficient, for, if the title of the first act is broad enough to have covered the new matters of the amendatory act, it is enough. Roby v. Sheppard, 42 W. Va. 286, 26 S. E. Rep. 278; Bridges v. Shallcross, 6 W. Va. 562; State v. Mines, 38 W. Va. 125, 18 S. E. Rep. 470; State v. Brookover, 38 W. Va. 141, 18 S. E. Rep. 476; Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357.
Hence, an amendatory act which merely continues a tax, which has been imposed by a previous act is valid though the amendatory act does not state the object to which the tax is to be applied. Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357.
Amending the Code. — Where an act of assembly has been incorporated in the Code, this act may be amended, re-enacted or repealed by an act which simply refers to the number of its section. Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357.
Amendment by Implication. — Statutes which amend each other by implication are not within the provisions of this clause, and it is not essential that they even refer to the acts or section which, by implication, they amend. State v. Cain, 8 W. Va. 720; Roby v. Sheppard, 42 W. Va. 286, 26 S. E. Rep. 278.
When Title Is Restricted. — The title to an act may be so restricted as to exclude matters indicated in *731 the title. la sucli case, the matter excluded by the restrictive words of the title cannot he inserted in the hody of the statute without making" it void. Fidelity, etc., Co. v. Shen., etc., R. Co., 86 Va. 1, 9 S. E. Rep. 759.
Employment of “And So Forth” to Enlarge Title.— The use of the term, “and so forth*’ cannot enlarge the meaning of other words employed in the title of an act nor supply any omission therein. Laccy v. Palmer, 93 Va. 159, 24 S. E. Rep. 930.
Rule of Construction. — Generally, the language of title should he construed in its most comprehensive and liberal sense favorable to the validity of the act, so as to bring the contents of the act within the title; and only when it is very manifest that the contents of the act is not within the title, should the act, or any part of it, be deemed invalid. State v. Mines, 38 W. Va. 135, 18 S. E. Rep. 470; State v. Brookover, 38 W. Va. 141, 18 S. E. Rep. 476; Shields v. Bennett, 8 W. Va. 74.
2. RECORDING- VOTE ON JOURNAL OF HOUSE. —Every resolution requires the consent of both houses, and if the constitution provides that, upon the passage of an act, the vote shall he determined by ayes and noes, and the names of the persons voting shall he entered on the journals of the respective houses, this provision must he strictly complied with, and if the vote is not taken in the manner provided, the act is of no force. Lambert v. Smith, 98 Va. 268, 38 S. E. Rep. 938; Christian v. Taylor, 96 Va. 503, 31 S. E. Rep. 904; Field v. Auditor, 83 Va. 882, 3 S. E. Rep. 707.
And where the constitution prescribes the precise manner in which bills shall be passed and requires that the journal shall show that these provisions have been complied with, the court may look behind the act to the legislative records and if these fail to comply with the constitution, as to the bill in question, the act cannot be sustained. Osburn v. Staley, 5 W. Va. 85, 13 Am. Rep. 640. But the legislative records are conclusively presumed to be true, and evidence to contradict or vary them is inadmissible. Wise v. Bigger, 79 Va. 269.
VI. CONSTITUTIONAL GUARANTIES.
1. TRIAL BY JURY IN CJVIL CASES.
Not Applicable to Equity Causes. — The provision in any constitution, whether state or federal, which guarantees the right of trial by jury, must be read in the light of the circumstances under which it was adopted. Unless the right of trial by jury existed at the time of its adoption, in the particular case, it cannot be contended that such a right was to be given by the constitution, unless it expressly so provides or is necessarily implied. Pillow v. Southwest, etc., Imp. Co.. 93 Va. 144, 23 S. E. Rep. 32; Cecil v. Clark, 44 W. Va. 659, 30 S. E. Rep. 216; N. Y., etc., Ins. Co. v. Davis. 94 Va. 427. 26 S. E. Rep. 941.
Extension of Equity Jurisdiction. — in matters of such nature as give a right to jury trial under the constitution, the legislature cannot extend equity jurisdiction over them and deprive the parties of the trial by j ury against their will. But where at the time of the adoption of the constitution, equity exercised jurisdiction over certain matters, the clause of the constitution guarantying jury trial does not relate to such matters or deprive equity of jurisdiction therein to act without a jury. Cecil v. Clark, 44 W. Va. 659, 30 S. E. Rep. 216; Pillow v. S. W. Va. Imp. Co., 92 Va. 144, 23 S. E. Rep. 32; N. Y., etc., Ins. Co. v. Davis, 94 Va. 427, 26 S. E. Rep. 941.
Butithas been held that the constitutional provision that “in suits at common law the right to trial by jury, if required by either party, shall be preserved” does not prevent the legislature from passing a statute giving a court of equity jurist diction of a case. McKinsey v. Squires, 32 W. Va. 41, 9 S. E. Rep. 55.
Where Jury Trial Is Optional.— Where the parties may have a jury trial if they so desire, this is a sufficient compliance with the constitutional provision that a person shall not be deprived of a right of trial by jury. McKinsey v. Squires, 32 W. Va. 41, 9 S. E. Rep. 55.
Nonsuit. — The court may deprive a party of his right to trial by jury, by ordering a nonsuit, but the plaintiff may refuse to suffer a nonsuit, and thus leave the whole to the jury. Ross v. Gill, 1 Wash. 87; Thweat v. Finch, 1 Wash. 219. See monographic note on “Juries” appended to Chahoon v. Com., 20 Gratt. 738.
2. RIGHTS OF ACCUSED IN CRIMINAL CASES.
a. Jury Trial.
(2) When Rule Applicable.
Distinction between Trials in State and Federal Courts. — The provision of the United States constitution declaring that the trial of all crimes, except incase of impeachment, shall be by jury, only applies to trials held under the authority of the government of the United States, and makes the jury an indispensable requisite of the trial oí a person accused of crimes in the courts of that government. But the articles of the Virginia and West Virginia constitutions which provide that aman has a right to a speedy trial by an impartial jury means that he has a legal claim to a trial by jury — that a jury trial is his privilege. But the presence of a jury is not made a jurisdictional fact, without which a court is not duly organized for the trial of criminals as is the case in all of the United States courts Brown v. Epps, 91 Va. 726, 21 S. E. Rep. 119; McKinsey v. Squires, 32 W. Va. 41, 9 S. E. Rep. 55.
Not Applicable to Contempt Cases. — The power of courts to punish for contempt is inherent, and a statute providing fora jury trial in case of con-tempts is unconstitutional. Carter v. Com., 96 Va. 791, 32 S. E. Rep. 780; Com. v. Deskins, 4 Leigh 685; Wells v. Com., 21 Gratt. 500; State v. Frew, 24 W. Va. 416. See also, Dandridge’s Case, 2 Va. Cas. 408.
Misdemeanor Cases. — And the constitutional right to trial by jury does not extend to a warrant before a justice for Sabbath breaking where the fine which can be imposed is only two dollars. Ex parte Marx, 86 Va. 40, 9 S. E. Rep. 475. See also, State v. Griggs, 34 W. Va. 78, 11 S. E. Rep. 741.
Where Jury Trial Hay Be Had in Appellate Court.— Though a charge or matter in the municipal or justice's court be one in respect of which a party is entitled by the bill of rights to a trial by j ury. yet if by an appeal clogged by no unreasonable restriction, he can have such a trial as a matter of right in the appellate court, this is sufficient and his constitutional right to trial by jury is not invaded by the summary proceeding in the first instance. Brown v. Epps, 91 Va. 726, 21 S. E. Rep. 119, overruling Miller v. Com., 88 Va. 618, 14 S. E. Rep. 161; Jelly v. Dils, 27 W. Va. 267; Moundsville v. Fountain, 27 W. Va. 182; Beasley v. Town of Beckley, 28 W. Va. 81.
Grand Juries. — The provision in the United States constitution that no person shall be held to answer for a capital or otherwise infamous crime unless’on a presentment or indictment of the grand jury, does not provide for the number of persons to constitute the grand jury, but leaves the construction
*732 of grand juries to the state. A state may compose a grand jury in her courts as shall he provided by law, and if the law provides for a grand jury of seven, or any other number, an indictment by such number is due process of law. Hausenfluck v. Com., 85 Va. 702, 8 S. E. Rep. 683.
(2) Waiver of Bight.
Right May Be Waived in Hisdemeanor Cases. — The legislature may provide for the trial of misdemeanor by the court in lieu of a jury with the consent of a defendant. And where the record shows, “that neither party required a jury, and the court is substituted in lieu of a jury to try the case,” and the case is tried by the court, this is consent entered of record and the trial is valid. King v. Burdett, 12 W. Va. 688; State v. Griggs, 34 W. Va. 78, 11 S. E. Rep. 740; State v. Cottrill, 31 W. Va. 162, 6 S. E. Rep. 428; State v. Denoon, 34 W. Va. 139, 11 S. E. Rep. 1003.
Waiver of Objection to Composition of Jury. — Where the constitutional provision of a state is that a party shall be tried by a jury of twelve men, a trial by a jury composed of thirteen men is erroneous, and their verdict should be set aside. But a verdict rendered by eleven, instead of twelve jurors, is valid, where it appears that the parties consented in open court to a trial by eleven. Roach v. Blakey, 89 Va. 767, 17 S. E. Rep. 228; State v. Hudkins, 35 W. Va. 247, 13 S. E. Rep. 367.
Effect of Waiver. — The constitutionality of a statute providing for depositing jury fees before a jury can be had, cannot be raised in a case where a jury was waived. Rutter v. Sullivan, 25 W. Va. 427. See generally, monographic note on “Juries” appended to Chahoon v. Com., 20 Gratt. 733.
b. Speedy Trial.
Meaning of “Speedy” Trial. — A “speedy” trial is guaranteed by the constitution .to all persons accused of felony. What is meant by the "speedy trial” guaranteed by the constitution, and what is the delay in the trial of one charged with felony that shall forever discharge him from prosecution, has been construed and interpreted by the legislature of Virginia in the enactment of a statute, that “every person against whom an indictment is found charging a felony, and held in any court for trial, shall be forever discharged from prosecution for the offence, if there be three regular terms of the circuit, or four of the county, corporation, or Hustings court, in which the case is pending, after he is so held without a trial,” unless the failure to try is due to certain causes mentioned in the statute. Benton v. Com., 91 Va. 782, 21 S. E. Rep. 495; Nicholas v. Com., 91 Va. 741, 21 S. E. Rep. 364; Adcock v. Com., 8 Gratt. 661; Benton v. Com., 90 Va. 328, 18 S. E. Rep. 282; Com. v. Cawood, 2 Va. Cas. 527; Brown v. Epps, 91 Va. 726, 21 S. E. Rep. 119.
What Is Not a Denial of a Speedy Trial. — But the fact that one term of the county court has passed without an order in the case is not a denial of a speedy trial. Nicholas v. Com., 91 Va. 741, 21 S. E. Rep. 364 ; Benton v. Com., 90 Va. 741, 21 S. E. Rep. 364; Benton v. Com., 90 Va. 328, 18 S. E. Rep. 282. And a prisoner is' not entitled to be discharged from prosecution for an offence merely because a new trial has been granted him on the ground that his case has been erroneously continued at one term of the county court on the motion of the commonwealth, against his protest. Benton v. Com., 91 Va. 782, 21 S. E. Rep. 495. See also, Benton v. Com., 90 Va. 328, 18 S. E. Rep. 282.
c. To Be Present at triad.
In What Cases Prisoner Must Be Present. — In felony
cases the accused must be present .throughout all the proceedings, and that fact must appear from the record. Hooker v. Com., 13 Gratt. 763 ; State v. Conkle, 16 W. Va. 747 ; State v. Sutfin, 22 W. Va. 773 ; State v. Greer, 22 W. Va. 811 ; Shelton v. Com., 89 Va. 453, 16 S. E. Rep. 365; Coleman v. Com., 90 Va. 635, 19 S. E. Rep. 161; Younger v. State, 2 W. Va. 579; Jackson v. Com., 19 Gratt. 656; State v. Strauder, 8 W. Va. 691; Snodgrass v. Com., 89 Va. 688, 17 S. E. Rep. 238 ; Bond v. Com., 83 Va. 585, 3 S. E. Rep. 149; Lawrence v. Com., 30 Gratt. 851; Boswell v. Com., 20 Gratt. 865; State v. Allen, 45 W. Va. 65, 30 S. E. Rep. 209 ; State v. Parsons, 39 W. Va. 464, 19 S. E. Rep. 876 ; Gilligan v. Com., 99 Va. 816, 37 S. E. Rep. 962; Sperry v. Com., 9 Leigh 623.
Does Not Apply to Misdemeanor Cases. — In Virginia the verdict of guilty upon an indictment for a misdemeanor may be rendered in the absence of the accused, even though the penalty is imprisonment. U. S. v. Shepherd, 1 Hughes (U. S.) 520 ; Price v. Com., 33 Gratt. 819, 36 Am. Rep. 797; Shiflett v. Com., 90 Va. 386, 18 S. E. Rep. 838.
At What Time Prisoner Must Be Present. — Upon a trial for felony it is the right of the prisoner to be present from the arraignment to the verdict; and this right cannot be waived by him. And if the evidence of a witness on the trial, which has been reduced to writing, or any part of it, is read to the jury in the absence of the prisoner, it is error for which the verdict will be set aside. Jackson v. Com., 19 Gratt. 656; Sperry v. Com., 9 Leigh 623; Gilligan v. Com., 99 Va. 816, 37 S. E. Rep. 962. But after the prisoner has been sentenced, and has' been carried to jail, it is no error to hear the statements of his counsel that he has no bill of exceptions to offer. Gilligan v. Com., 99 Va. 816, 37 S. E. Rep. 962.
But the statute (Va. Code, ch. 208, §3), which provides that a person tried for felony shall be personally present during the trial, does not apply before his arraignment, and therefore before arraignment an order may be made in his absence. Boswell v. Com., 20 Gratt. 860 ; Kibler v. Com., 94 Va. 804, 26 S. E. Rep. 858 ; Anderson v. Com., 84 Va. 77, 3 S. E. Rep. 803.
Presence Inferred from Record. — The presence of the accused must appear from the record, and no presumption that all things were rightly done by the trial court will supply the omission. This rule is satisfied, however, when the record shows the presence of the prisoner and declares that the jury “retired to their room to consider of their verdict, * * * whereupon the prisoner, by his counsel, moved the court not to proceed to judgment upon the verdict aforesaid” but to set it aside as contrary to the law and evidence. Gilligan v. Com., 99 Va. 816, 37 S. E. Rep. 962. See also, Lawrence v. Com., 30 Gratt. 845; Benton v. Com., 91 Va. 794, 21 S. E. Rep. 495; Cluverius v. Com., 81 Va. 848; Com. v. Cross, 44 W. Va. 315, 29 S. E. Rep. 527; Sperry v. Com., 9 Leigh 622.
Where at the end of the record of the proceedings of the court on the day of the conviction of the prisoner, it is stated “and thereupon the accused was remanded to jail,” this is conclusive that he had been personally present during all of the proceedings had that day. Cluverius v. Com., 81 Va. 787; Lawrence v. Com., 30 Gratt. 851.
But an entry upon the record, “This case was continued for the defendant,” does not show that he was personally present, as it is a settled principle that the presumption that a court of general jurisdiction acts rightly cannot supply an essential *733 part of tlie record. Shelton v. Com., 89 Va. 450, 16 S. 33. Rep. 365.
And upon a recital in the record that the defendant appeared by attorney, it will not be presumed that he was personally present. Sperry v. Com., 9 Leigh 623.
Continuance and Amendment May Be Made in Absence of Accused. — Where the prisoner is not prejudiced, it is not error to continue an indictment against him for a felony in his absence. O’Boyle v. Com. (Va. 1901), 7 Va. Law Reg. 691. And the court may amend the judgment, during the same term in which it was rendered, in the absence of the accused. Price v. Com.. 33 Gratt. 819.
d. To Be Confronted with Accusers.
Reading Former Testimony of Absent Witness.—
Both state and federal constitutions provide that in all capital or criminal prosecutions a man has a right to be confronted with his accusers and witnesses. Under this clause it is held in Virginia that the fact that the accused was confronted with his accusers at a former trial, at which their testimony was written down, is not sufficient to allow this testimony to be read in evidence on a second trial where the witnesses are absent from the commonwealth at the date of the second trial. Finn v. Com., 5 Rand. 710; Crite v. Com., 1 Va. Dec. 423: U. S. v. Angell, 11 Fed. 34.
Reading Testimony Where Witness Has Died Since First Trial. — while the rule above laid down may be the true one where the witness is absent from the commonwealth at the date of the second trial, the supreme court of the United States has held that where the witness has died since the first trial his testimony given at that trial may be read in evidence at the second trial. Mattox v. U. S., 156 U. S. 237. This view is based upon the ground that the .substance of the constitutional protection is preserved to the prisoner in the advantage he has once had of seeing the witnesses face to face, and of subjecting them to the ordeal of a cross-examination. No case has arisen in Virginia where the witness was dead at the date of the second trial.
In U. S. v. Angell, 11 Fed. 43, the court said: “The fair meaning of the constitution is that wherever and whenever he Lthe accnsed] is put on his final trial he shall be confronted with the witnesses against him, if they are alive.”
Rule Does Not Apply to Misdemeanor Cases Where Accused Has Been Summoned. — Where a person has been duly summoned to answer a prosecution for a misdemeanor and fails to be present, proceeding in his absence with the trial and sentencing him to imprisonment, is no violation of this constitutional provision as he will be deemed, in such case, to have waived the benefit of the provision. Shifiett v. Com., 90 Va. 386, 18 S. E. Rep. 838.
Application Limited to Criminal Cases. — In civil cases this provision has no application, as the constitution expressly limits it to capital or criminal prosecutions. Va. Const, art. 1, sec. 10; Finn v. Com., 5 Rand. 710; Caton v. Lenox, 5 Rand. 31; Carrico v. W. Va., etc., R. Co., 39 W. Va. 86, 19 S. 33. Rep. 571. In this connection, see foot-note to Brogy v. Com., 10 Gratt. 722.
e. To Benefit op COUNSEL. — The constitutions of the states usually contain a provision that the accused in felony cases shall be entitled to the benefit of counsel. The constitution of Virginia, however, contains no snch provision. But in Virginia it is held that argument by counsel cannot be prohibited in a criminal case, however plain the case. Word v. Com., 3 Leigh 743; Early v. Com., 86 Va. 921, 11 S. E. Rep. 795; Jones v. Com., 87 Va. 63, 12 S. 13. Rep. 226; Barnes v. Com., 92 Va. 794, 23 S. E. Rep. 784. In West Virginia the benefit of counsel is guaranteed to accused by sec. 14, art. 3 of the constitution.
f. The Privilege of Silence.
To What Cases the Privilege Is Applicable. — Another right guaranteed by both state and federal constitutions, is that no person shall be compelled in any criminal case to be a witness against himself. This constitutional provision, however, is not limited to those cases where witnesses are called so testify in criminal prosecutions against themselves. But the privilege is as broad as the mischief against which it seeks to guard, and insures that a person shall not be compelled, when acting as a witness in any investigation, to give testimony which may tend to show that he himself has committed a crime. Cullen v. Com., 24 Gratt. 624; Kendrick v. Com., 78 Va. 490; Murphy v. Com., 23 Gratt. 960; Temple v. Com., 75 Va. 892.
Examination of Prisoner’s Garments Does Not Violate the Rule. — While the defendant in a criminal case cannot be compelled to criminate himself by acts or words, by the better doctrine he, or his garments, may be examined for evidence of the crime. Thus, in State v. Baker, 33 W. Va. 319, 10 S. E. Rep. 639, the trousers of the accused, which had been delivered to the sheriff by the prisoner without objection, were examined and found to contain blood stains. This was held admissible in evidence upon a trial for murder.
Testifying before Grand Jury Not a Waiver of Privilege. — The privilege of silence is not waived by the witness by testifying before the coroner, or grand jury, even though the crime is established and the indictment found solely on his testimony, and he may still decline to testify on the trial of the party indicted. Temple v. Com., 75 Va. 892; Cullen v. Com., 24 Gratt. 624.
Abridgment of Privilege — Indemnity against Prosecution. — This constitutional privilege of silence cannot be taken away by statute, unless absolute indemnity is provided, and nothing short of complete amnesty to the witness, an absolute wiping out of the offences as to him so that he can no longer be prosecuted therefor, will furnish that indemnity. But if he is thus fully protected by statute, he may be compelled to answer, though his testimony may show that he has committed a crime. This indemnity, however, must be positively guaranteed to him by statute, and an offer of indemnity by the court or prosecuting attorney is not sufficient. Kendrick v. Com., 78 Va. 490; Cullen v. Com., 24 Gratt 624; Temple v. Com., 75 Va. 892; Murphy v. Com., 23 Gratt. 960.
g. Exemption from Being Put Twice in Jeopardy — The constitution of the United States provides that no person shall be subject, for the same offence, to be twice put in jeopardy of life or limb. This provision being one of the first eight amendments only applies to proceedings in the courts of the United States. Most of the state constitutions contain a similar clause, but the constitution of Virginia contains no such provision. The common-law maxim, however, on which this provision is founded, does exist in Virginia and goes even further than that provision. For while that is confined in terms to cases involving life or limb the maxim extends to all criminal cases. Jones v. Com., 20 Gratt. 848; W. Va. Const, art. 3, sec 5. For a full discussion of this subject, see monographic note on “Autrefois, *734 Acquit and Convict” appended to Page v. Com., 26 Gratt. 943.
h. Exemption pbom Cbubl and unusual, Punishments.
Whipping Post Not a Cruel Punishment. — A statute which directs that a person convicted of a crime shall he imprisoned for a time not less than one, nor more than six months, and may receive stripes, at the discretion of the court, to he inflicted at one time, or at different times, provided the same does not exceed thirty-nine at any one time, is not within the constitutional inhibition against cruel and unusual punishments. Com. v. Wyatt, 6 Rand. 693. See also, Aldridge v. Com., 2 Va. Cas. 447.
Selling Convicts as Slaves. — And a statute providing that a free person of color, who is convicted of a crime, may he condemned to he sold as a slave, and transported and banished beyond the limits of the United States is not unconstitutional. Aldridge v. Com.. 2 Va. Cas. 447.
i. Exemption prom Excessive Pines. — The constitution also guarantees that excessive fines shall not he imposed. But the imposition and regulation of fines being within the discretion of the legislature, its discretion will not he questioned by the courts, except where the minimum penalty is so excessive as to shock the sense of mankind. Hence, a statute imposing a fine is not in conflict with this provision simply because it does not fix the maximum fine that shall he imposed for an offence. If the verdict of the jury, in such case, imposes an excessive fine the court may set it aside. So. Ex. Co. v. Walker, 92 Va. 59, 22 S. E. Rep. 809.
3. PERSONAL LIBERTY AND SECURITY — The constitutional provision guarantying to every one the enjoyment of life and liberty, with the means of pursuing and obtaining happiness and safety, is not violated by a statute which provides that persons convicted of carrying concealed weapons shall be deemed guilty of a misdemeanor, but that persons proving themselves to be good and peaceable citizens, and that they were carrying the weapon for self-defence only, shall be acquitted. State v. workman, 35 W. Va. 367, 14 S. E. Rep. 9, 14 L. R. A. 600.
And a statute directing that vessels about to sail north of the capes of Virginia be searched in order to prevent the escape of slaves, is not in conflict with the constitutional provision against unreasonable seizures and searches, as there is a distinction between the search of vessels of commerce on navigable waters, and dwelling houses or other suspected places. Baker v. Wise, 16 Gratt. 139.
4. FREEDOM OF SPEECH AND OF THE PRESS. —The constitutions of the several states contain provisions guarantying to their citizens the right of freedom of speech, and providing that this right shall not be abridged by any act of the legislature. Under such a provision, a law which denies to candidates for office the right to electioneer is invalid. Louthan v. Com., 79 Va. 198, 52 Am. Rep. 626.
The constitutional provision guarantying freedom of speech and of the press was not intended, however, to restrict the right of taxation for the support of the government. Hence, a city ordinance which imposes a tax upon the business of publishing newspapers does not infringe upon this provision. City of Norfolk v. Norfolk Landmark Co., 95 Va. 564, 28 S. E. Rep. 959.
5. EQUAL PROTECTION OF LAWS.
a. CIjAss Legislation in General. — 'Under the amendment to the federal constitution providing that all persons shall have equal protection of the laws and the rights and privileges of citizens shall not be abridged, the rights of every individual must stand or fall by the same rule of law that governs every other member of the body politic under similar circumstances; and every partial or private law which directly proposes to destroy or affect individual rights, or does the same thing by restricting the privileges of certain classes of citizens, and not of others, when there is no public necessity for such discrimination, is unconstitutional and void. State v. Goodwill, 33 W. Va. 179, 10 S. E. Rep. 285.
What Are Privileges and Immunities Guaranteed by This Clause. — The immunities and privileges secured to citizens of the United States by the constitution, are the right to protection by the government; the enjoyment of life and liberty; the right to acquire and possess property of every kind, and to pursue happiness and safety. They do not include the right to share the property belonging to the people of the state; and an act which forbids the planting of oysters in the water of the state by any person not a resident, is a constitutional act. McCready v. Com., 27 Gratt. 985, affirmed in 94 U. S. 391.
And it has been held that the privileges and immunities guaranteed by the fourteenth amendment to the federal constitution are those of citizens of the United States as distinguished from those of citizens of the several states. State v. Peel Splint Coal Co., 36 W. Va. 802, 15 S. E. Rep. 1000.
Contracts between Employer and Employee. — The courts of West Virginia have regarded any attempt by the legislature of that state to nullify contracts or other dealings between employers and employees as infringements of the right of the employer and employee. Thus in State v. Goodwill, 33 W. Va. 179, 10 S. E. Rep. 285, a statute declaring that all persons engaged in mining coal, ore or other minerals, or mining or manufacturing them, or either of them, or manufacturing iron or steel, or both, or any other kind of manufacturing, should not issue for the payment of labor, any order or other paper, unless the same purports to be redeemable at its face value in legal money of the United States, bearing interest at the legal rate, made payable to the employee or bearer, and redeemable within thirty days by the maker thereof, was held unconstitutional and void.
And a statute declaring that it shall be unlawful for any person, Arm, or corporation engaged in mining or manufacturing and interested in merchandising, to knowingly and wilfully sell any merchandise or supplies to any employee at a greater per cent, of profit than when selling merchandise or supplies of like quality, character, and quantity to other customers buying for cash, and not employed by them, is void, because it is class legislation, and an unjust interference with the rights, privileges, and property of both the employer and employee. State v. Fire Creek Coal etc., Co., 33 W. Va. 188, 10 S. E. Rep. 288.
But in Peel Splint Coal Co. v. State, 36 W. Va. 802, 15 S. E. Rep. 1000, 17 L. R. A. 385, an evenly divided court affirmed the judgment of the trial court which held that a statute providing that employers should not pay the wages of their employees in other than lawful money of the United States, did not abridge the privileges and immunities of citizens, nor did it deprive any person of life, liberty or property without due process of law.
*735 Discrimination against Certain Manufacturers. — And it is not competent for the legislature to single out owners and operators of mines, and manufacturers of every Mnd, and provide that they shall hear burdens not imposed on other owners of property or employers of labor, and prohibit them from mating contracts which it is competent for other owners of property or employers of labor to mate. Such legislation cannot be sustained as an exercise of the police power. State v. Goodwill, 33 W. Va. 179, 10 S. E. Rep. 385, 25 Am. St. Rep. 863, 6 L. R. A. 621.
Statutes Giving Priority of Liens. — A statute confined in its operation to the giving of prior liens to parties furnishing supplies to transportation or mining companies is not unconstitutional as all persons subject to it are treated alike under the same conditions. Va. Dev. Co. v. Crozer Iron Co., 90 Va. 126, 17 S. E. Rep. 806.
Privileges Are Personal — The privileges and immunities guaranteed to citizens of states of the Onion are annexed to their status of citizenship; they are personal and may not be assigned or imparted by them or any of them to any other person natural or artificial. Slaughter v. Com., 13 Gratt. 767.
Discrimination against Foreign Corporations. — A state may forbid foreign corporations engaging in business within its limits, or it may impose reasonable restrictions upon the right to do business provided that such discrimination does not interfere with any transaction by such corporations of interstate or foreign commerce. Toledo Tie & Lumber Co. v. Thomas, 33 W. Va. 566, 11 S. E. Rep. 37; Slaughter v. Com., 13 Gratt. 767. See post, “Interstate Commerce.”
Denying Right to Sue to Enemies. — And enemies in war have no right to enter and use the courts of the adverse party, and it is competent for the legislature to permit them to do so on such terms as it may prescribe. Hence, an act prohibiting a party against whom a judgment has been recovered as an absent defendant from appearing in court and opening the judgment unless he take the prescribed oath, in effect purging him of all complicity in the rebellion, is constitutional. Peerce v. Carskadon, 4 W. Va. 234.
Discrimination against Nonresidents under the Police Power, — Where, however, in the regulation of any subject of internal police, a regard to justice and the due and convenient enforcement of its laws, requires a state to adopt a different mode of proceeding, or a modification of the regulation, in respect to persons residing outside of the state, in order fairly to meet and provide for the circumstances of their nonresidence, the competency of the state to so act is not taken away by this provision of the United States constitution. Por example, a Virginia statute which provided that vessels of nonresidents sailing north should be searched, before sailing, by pilots, to ascertain whether any escaping slaves were on board, and that the captain of the vessel should pay the pilot a fee for making the search, was held not In conflict with the constitution. Baker v. wise, 16 Gratt. 130. Seeposi, “The Police Power.”
b. Racial Discrimination.
Statutes Denying Colored Persons the Right to Be Jurors. — A statute which, in effect, singles out and denies to colored citizens the right and privilege of participating in the administration of the law, as j urors, because of their color, though qualified in all other respects, is practically, a brand upon them affixed by the law. and is a discrimination against that race, forbidden by the fourteenth amendment to the federal constitution. It is a denial of the equal protection of the laws to the race thus excluded, since the constitution of juries is a very essential part of the protection which the trial by jury is intended to secure. The very idea of a jury is a body of men composed of the peers or equals of the person whose rights it is selected or summoned to determine; that is, of persons haying the same legal status in society as that which he holds. Strauder v. West Virginia, 100 U. S. 303, overruling State v. Strauder, 11 W. Va. 745.
Different Schools for the Different Races — But a statute providing that white and colored children shall not be taught in the same school is not a discrimination against the colored race within, the meaning of the amendment. Martin v. Board of Education, 42 W. Va. 514, 26 S. E. Rep. 348. In this case, the court construing the statute referred to above, said: “The only privilege that appears to be denied to colored children in this section is that of association with white children and vice versa. If it had required that they should be taught in the same school, then it would have been a compulsory infringement of the rights of both, but, as it is now, it treats them both alike, and places them precisely on the same footing. It prevents the legislature and boards of education from Infringing on the rights of both in compelling them to attend a common school, which might be highly detrimental to both, and injurious to the school. Social equality cannot be enforced bylaw.”
Bequest to Educate White Children is Valid. — And a bequest of money to be used in the education of white children is not invalid on the ground that its enforcement would be a discrimination between white and colored children in contravention of the fourteenth amendment to the United States constitution. Kinnaird v. Miller, 25 Gratt. 107.
6. PROPERTY GUARANTIES.
a. Due Process ojp Law.

(l) In General.

Due Process Depends on Facts of Each Case. — So impossible Is it to lay down any general rule of uniform application in this connection, that it may be said that each case must be decided with reference to its own particular facts. Many cases illustrate what is due process of law, and many attempt to define It, but it cannot be said that any definition has been laid down which is of universal application. State v. Sponaugle, 45 W. Va. 415, 33 S. E. Rep. 283.
Supreme Court of United States Final Authority as to What Constitutes Due Process. — it is with the supreme court of the united States to determine finally whether legislation or action under state authority is due process of law. State v. Sponaugle, 45 W. Va. 415, 32 S. E. Rep. 283.
Fourteenth Amendment Operates upon the States.— The provision oí the original draft of the United States constitution, that no person shall be deprived of life, liberty, or property without due process of law, was designed as a limitation of the powers of the national government, and is inapplicable to the legislation of the states. But the fourteenth amendment operates directly upon the states. Before the adoption of the fourteenth amendment the state might devest vested rights of property, where such rights were not vested by contract, but since its adoption this can only be done by “due process of law.” Peerce v. Kitzmiller, 19 W. Va. 564; White v. Crump, 19 W. Va. 583; *736 Com. v. Byrne, 20 Gratt. 165; Williams v. Freeland, 19 W. Va. 599; Griffee v. Halstead, 19 W. Va. 602; Peerce v. Adamson, 20 W. Va. 57.
Public Office Is Not Property. — A public office is not property, within the meaning; of the constitutional provision that no person shall he deprived of life, liberty or property without due process of law and the judgment of his peers. It is a mere public agency,¡revocable according to the will and appointment of the people, as expressed in the constitution and the laws enacted in conformity therewith. Moore v. Strickling, 46 W. Va. 515, 33 S. E. Rep. 274. (2) In Judicial Proceedings.
Generally. — “Due process of law” means in the due course of legal proceedings according to those rules and forms which have been established for the protection of private rights securing to every person a judicial trial before he can be deprived of life, liberty or property. Peerce v. Kitzmiller, 19 W. Va. 564; White v. Crump, 19 W. Va. 583; Williams v. Freeland, 19 W. Va. 599; Griffee v. Halstead, 19 W. Va. 602; Peerce v. Adamson, 20 W. Va. 57. See also, Rickard v. Schley, 27 W. Va. 617.
Court Must Have Jurisdiction. — In order to constitute due process of law it is necessary that the court shall have jurisdiction, and that some recognized and accustomed mode of procedure be pursued. In addition to this, the complaint must be preferred by the proper party and against the proper party, and in such manner that the defendant may avail himself of all just defences permitted him by the law of the land. A mode of procedure which does not afford the defendant an opportunity to make an intelligent defence to the demands or charges against him is not due process of law. Williams v. Newman, 93 Va. 719, 26 S. E. Rep. 19.
Opportunity to Be Heard. — “Due process of law” also requires that a person shall have reasonable notice, and a reasonable opportunity to be heard before an impartial tribunal, before any binding decree can be made affecting his rights to liberty or property. It is not enough that the owner may by chance have notice, or that he may, as a favor, have a hearing. The law itself must require notice to him, and give him a right to a hearing and an opportunity to be heard. While the legislature may prescribe the kind of notice and the mode of service, it cannot dispense with all notice. Violett v. Alexandria, 92 Va. 561, 25 S. E. Rep. 909; Boggs v. Com,, 76 Va. 989; Kinney v. Beverley, 2 H. & M. 318.
But a statute providing that if alleged conspirators are present, aiding and abetting the commission of an act, it shall be presumed that the act was done in pursuance of a conspiracy, is not unconstitutional as authorizing the conviction without due process of law. State v. Bingham, 42 W. Va. 234, 24 S. E. Rep. 883.
Invalid Judgment Cannot Be Validated. — An act of legislature attempting to validate proceedings before persons who undertake to act as judges, but who were wholly without authority, is unconstitutional and void, as in effect taking one man’s property from him and giving it to another. Griffin v. Cunningham, 20 Gratt. 31.
Prescribing Condition Precedent to Right of Action,— A fence law which requires a land owner to enclose his land by a lawful fence, as a prerequisite to the right to recover from damages done by trespassing animals, does not violate the constitutional provision that private property shall not be taken for public use without just compensation, nor does it deprive him of the means of acquiring or possessing property. Poindexter v. May, 98 Va. 143, 34 S. E. Rep. 971.

(3) In Taxation Proceedings.

Hearing Not Essential. — But due process of law does not always require judicial hearing. It does in matters of purely judicial nature, but not in matters of taxation or other matters purely administrative. State v. Sponaugle, 45 W. Va. 415, 32 S. E. Rep. 283.
Forfeiture of Land for Nonpayment of Taxes. — Where it is provided by statute that if the owner of lands fails to enter on the land and pay the taxes for five years, the land shall be forfeited, without any judicial proceeding or inquest, this does not deprive the owner of his property without due process of law. State v. Swann, 46 W. Va. 128, 33 S. E. Rep. 89; Wild v. Serpell, 10 Gratt. 405; Staats v. Board, 10 Gratt. 400; Hale v. Branscum, 10 Gratt. 418; Levasser v. Washburn, 11 Gratt. 572; Yokum v. Fickey, 37 W. Va. 762, 17 S. E. Rep. 318; King v. Mullins, 171 U. S. 404, 18 Sup. Ct. 925; State v. Cheney, 45 W. Va. 478, 31 S. E. Rep. 920; State v. Sponaugle, 45 W. Va. 415, 32 S. E. Rep. 283; Twiggs v. Chevallie, 4 W. Va. 463; Smith v. Tharp, 17 W. Va. 221; Va. Coal Co. v. Thomas, 97 Va. 527, 34 S. E. Rep. 486.
Local Assessments. — Where a law authorizes a town to levy local assesssments upon parties specially benefited by town improvements, the parties of whom the assessments are required must have notice of the assessments and an opportunity to resist them before an impartial tribunal, or else they will be deprived of their property without due process of law. Norfolk v. Young, 97 Va. 728, 34 S. E. Rep. 886; Heth v. Radford, 96 Va. 272, 31 S. E. Rep. 8; Violett v. Alexandria, 92 Va. 561, 23 S. E. Rep. 909; Davis v. Lynchburg, 84 Va. 861, 6 S. E. Rep. 220. See post, “Taxation — Local Assessments.”
The Virginia Statute for Taxing Bank Shares. — The Virginia statute, providing for the taxation of bank shares, which requires the banks themselves to make returns showing the market value of their shares, and itself fixes the rate of tax which shall be levied on such valuation is not unconstitutional as depriving the shareholders of their property without due process of law, although it provides for no notice to them of the assessment, or opportunity to be heard thereon, and makes the tax bills self-executing and enforceable by levy without suit, since no judicial act is done by any officer in relation to such assessment and no action is taken after the return is made by the bank which could in any way be affected by a notice or hearing. People’s Nat. Bank of Lynchburg v. Marye, 107 Fed. Rep. 570, 7 Va. Law Reg. 47.
(4) In Condemnation Proceedings. — In cases where private property is sought to be taken for public use, the owner of the property must have an opportunity to contest the taking, and in all cases he must have just compensation for property which is taken. Varner v. Martin, 21 W. Va. 534; Pittsburg, etc., R. Co. v. Benwood Iron Works, 31 W. Va. 710, 8 S. E. Rep. 453; Mason v. Harper’s Ferry Bridge Co., 17 W. Va. 396; B. & O. R. Co. v. Pittsburg, etc., R. Co., 17 W. Va. 812; Chesapeake, etc., R. Co. v. Washington, etc., R. Co., 99 Va. 715. Fora full discussion, see mono-graphic note on “Eminent Domain.” b. Obligation of Contract protected.
(2) In General.
Who Hay Raise Question. — The question that a law impairs the obligation of contract can only be raised by one directly interested. Courts will not pro *737 nounce a statute unconstitutional because it may impair the rights of persons not complaining' of its unconstitutionality. Antoni v. Wright, 22 Gratt 883.
Congress Cannot Authorize a State to Impair Contracts. — Congress has no power to authorize a state to pass laws impairing the obligation of a contract. Homestead Cases, 22 Gratt. 266, 12 Am. Rep. 507.
(2) What Is a Contract within Constitution.
Franchises. — Municipal corporations have power to confer franchises on individuals or corporations to use their streets for the purpose of conveying electricity for the public use; and such franchises constitute valid contracts which cannot be destroyed or impaired by subsequent legislation. But, in the absence of express statutory authority, they have no power to confer an exclusive franchise, and if they attempt to do so, such franchise does not constitute a contract within the meaning of the constitutional inhibition against the impairment of the obligation of contracts. Clarksburg Electric Light Co. v. City of Clarksburg (W. Va.), 35 S. E. Rep. 994.
On the other hand, municipal charters are not contracts, but are granted for public purposes and may be amended or repealed at the discretion of the legislature. Probasco v. Town of Moundsville, 11 W. Va. 501.
Privilege of Conducting a Lottery. — The privilege of conducting a lottery is not a contract. Any one, therefore, who accepts a lottery charter does so with the implied understanding that the people in their sovereign capacity, and through their properly constituted agencies, may repeal it at any time when the public good shall require, whether it be paid for or not. Justice v. Com., 81 Va. 209; Dismal Swamp Canal Co. v. Com., 81 Va. 220; Phalen’s Case, 1 Rob. 713.
Judgments. — A judgment founded on contract is a contract and constitutes a vested right of property the value of which the legislature cannot destroy or diminish by retroactive legislation. Merchants’ Bank v. Ballou, 98 Va. 112, 32 S. E. Rep. 481.
Judgment Founded on Tort. — But a judgment founded on a tort is in no sense a contract; therefore the section of the constitution of West Virginia, which provides, that “No citizen of this state, who aided or participated in the late war between the government of the United States and a part of the people thereof on either side, shall be liable in any proceedings civil or criminal, nor shall his property be seized or sold under final process issued upon judgments or decrees heretofore rendered or otherwise because of any act done according to the usages of civilized warfare in the prosecution of said war by either of the parties thereto.” is not inhibited by section 10 of article 1 of the constitution of the United States, as it does not impair the obligation of a contract. Peerce v. Kitzmiller, 19 W. Va. 564; White v. Grump, 19 W. Va. 583.
Statute Authorizing City to Subscribe to Stock Cre= .ates No Contract —And where a city is authorized by a statute to subscribe to corporate stock upon a majority vote of the residents in favor of such subscription, an ordinance submitting the question of such subscription to the vote of the inhabitants, and the mere vote of the subscribed number of the voters in favor of the subscription, does not itself create a contract with the railroad company. Until the subscription is made the contract remains unexecuted, List v. City of Wheeling, 7 W. Va. 501.
Authority to County to Construct a Bridge. — And where a county is authorized to build a bridge this does not constitute such a contract as is protected against a subsequent repealing act. Supervisors v. Luck, 80 Va. 223.
Obligation to Pay Interest. — The legal obligation to pay interest or money due by contract, implied from the presumed intention of the parties, is a part of the obligation of the contract which state laws cannot impair. Hence, a statute authorizing the abatement of interest upon such contracts beyond what was allowable by the laws in force when the contracts were made, is unconstitutional. Roberts v. Cocke, 28 Gratt. 207; Cecil v. Deyerle, 28 Gratt. 775: Kent v. Kent, 28 Gratt. 840; Pretlow v. Bailey, 29 Gratt. 212.
Services Rendered by Judge. — But services ren dered by a judge do not partake of the nature of a contract so as to prevent the state auditor from refusing to audit a claim for salary on the ground that it should be paid by a city, rather than the state, after such salary had been paid by the state for several years. Holladay v. The Auditor, 77 Va. 425. See also, Foster v. Jones, 79 Va. 642.
Privilege of Suing States. — The privilege of suing a state may be extended or withheld at the pleasure of the state, and once granted it may be recalled at pleasure, unless during its existence rights have vested under or by virtue of it which the state has no constitutional right to defeat or impair by its subsequent recall. Further, if an act merely authorizes a judicial inquiry into the rights of the parties, but does not confer the power to enforce the results of such inquiry, its repeal is not prohibited by the state or federal constitution. Maury v. Com., 92 Va. 310, 23 S. E. Rep. 757.
(3) What Amounts to Impairment.
(a) Laws Affecting Substantial Rights.
Creation and Increase of Exemptions. — The rule governing the creation and increase of homestead exemptions is as follows: If the effect of the statute is to withdraw from execution the property of the debtor liable to execution when the debt was contracted, leaving property insufficient for the payment of his prior debts, the statute is in violation of the constitution. It impairs the effectiveness of the creditor’s remedy to the extent of the property attempted to be withdrawn, and to that extent impairs the legal obligation of the debtor’s contract. Homestead Cases, 22 Gratt. 266, 12 Am. Rep. 507; Speidel v. Schlosser, 13 W. Va. 686; Russell v. Randolph, 26 Gratt. 713.
Dispensing with Demand and Notice in Case of Dis° honor of Negotiable Instruments, — A statute providing that certain parties to negotiable notes shall remain bound after the maturity of the notes without demand, protest and notice of dishonor, is unconstitutional as to notes made and discounted before its passage. Farmers’ Bank v. Gunnell, 26 Gratt. 331. See also, Bank of Old Dominion v. McVeigh, 20 Gratt. 457.
Statutes Changing Beneficiaries under Public Trusts.
—And an act providing that in the contingency of a division of any religious society the majority may determine to which branch such congregation shall thereafter belong, which determination shall conclude questions as to the property held in trust for such congregation, is void as a violation of a contract, so far as it attempts to give the benefit of the trust property to others than those to whom it was exclusively limited by the one creating the trust. Finley v. Brent, 87 Va. 103, 12 S. E. Rep. 228, 11 L. R. A. 214.
*738 Statutes Postponing Time of Sale under Deeds of Trust. — So in a deed of trust to secure a debt, a provision for the time and terms of sale, upon tbe failure of tbe grantor to pay tbe debt, is of tbe obligation of tbe contract, and a law forbidding sales under sucb deeds for a limited time is therefore unconstitutional. Taylor v. Stearns, 18 Gratt. 244.
Statutes Changing Means of Enforcing Contract.— Nothing can be more material to the obligation of a contract than tbe means of its enforcement. Tbe ideas of validity and remedy are inseparable, and both are parts of the obligation which are guaranteed by the constitution against invasion. The laws which subsist at the time of making the contract, and where it is to be performed, enter into and form a part of it as if they were expressly referred to and incorporated in this term. It is competent for the states to change the form of the remedy, or to otherwise modify it as they may see fit, provided 'that no substantial right secured by the contract is thereby impaired. But any law, which in its operation amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution. Homestead Cases, 22 Gratt. 288; Merchants’ Bank v. Ballou, 98 Va. 112, 32 S. E. Rep. 481; Taylor v. Stearns, 18 Gratt. 244. See post, “Laws Affecting Remedy.”
Reducing Territory and Salary of a Judge. — under a constitutional provision that “all judges shall receive such salaries and allowan'ces as may be determined by law, the amount of which shall not be diminished during their term, ” the legislature may curtail the territory of a judge’s jurisdiction down to the constitutional minimum, although it diminishes his compensation. Foster v. Jones, 79 Va. 642, 52 Am. Rep. 637. See also, Holladay v. Auditor, 77 Va. 425.
Reducing Territory of a County. — And an act taking territory from the county giving it to a city does not impair the obligation of the creditors of the county. Wade v. City of Richmond, 18 Gratt. 583.
Providing for Sales under Execution to Be on Credit. —An act to prevent the sacrifice of property at a forced sale under an execution, which provides that the property shall be sold on a credit of twelve months, does not impair the obligation tof the creditor’s contract. Garland v. Brown, 23 Gratt. 173.
Statutes Providing That Judgment Shall Include Interest. — And a statute providing that a judgment for the payment of money shall be rendered for the aggregate of the principal and interest due at its date, with interest thereon from that date, is not an impairment of the obligation of contract. Fleming v. Holt, 12 W. Va. 143; Ruffner v. Hewitt, 14 W. Va. 737.
Statutes Denying Interest to Parties Engaged in Rebellion. — Astatute denying to persons who were engaged in the rebellion the' right to recover interest for the time during which they were enemies of the government is constitutional. Hutchinson v. Landcraft, 4 W. Va. 313.
Coupon Cases — Laws Providing That They Shall Not Be Receivable for Taxes. — where at the time of the issuance of bonds, by the state, it is provided that the coupons cut from such bonds shall be receivable in payment of taxes, a subsequent act providing that taxes shall only be paid in currency impairs the obligation of the contract between the state and the purchaser and is void. Antoni v. Wright, 22 Gratt. 833; Wise v. Rogers, 24 Gratt. 171; Greenhow v. Vashon, 81 Va. 340; Com. v. Maury, 82 Va. 886, 1 S. E. Rep. 186; Com. v. Jones, 82 Va. 795, 1 S. E. Rep. 84. See also, Board of Public Works v. Gannt, 76 Va. 463.
Same — Law Requiring a Special License for Sale of Coupons. — But a statute requiring a special license for the privilege of selling coupons detached from state bonds is not within the constitutional inhibition against laws impairing the obligation of contracts. Com. v. Lucas, 84 Va. 303, 4 S. E. Rep. 695: Com. v. Larkin, 84 Va. 517, 5 S. E. Rep. 526; Com. v. Plunkett, 84 Va. 519, 9 S. E. Rep. 1120; Com. v. Krise, 84 Va. 521, 9 S. E. Rep. 1121; Cuthbut v. Com., 85 Va. 899, 9 S. E. Rep. 16; Com. v. Maury, 82 Va. 883, 1 S. E. Rep. 185.
Same — Taxation of Coupons and Bonds. — The state is entitled to tax all persons, property and business within its jurisdiction, unless restrained by contract, expressed or implied. This includes the right to tax the bonds and the coupons attached thereto, which the state has issued, the funding act and the bonds and coupons issued under it constituting no contract that they shall be nontaxable. Com. v. Maury, 82 Va. 883, 1 S. E. Rep. 185. See monographic note on “Municipal, County and State Bonds” appended to De Voss v. City of Richmond, 18 Gratt. 338.
(b) Laws Affecting Remedies.
General Rule in Regard to Change of Remedy. — Litigants have no vested rights in the particular remedy existing at the time the contract is entered | into. It is entirely competent for the legislature to change either the remedy itself, or the court in which it is to be asserted; provided that adequate and sufficient means of enforcing the contract is provided by law. Shickel v. Berryville, etc., Co., 99 Va. 88, 37 S. E. Rep. 813; Poindexter v. Greenhow, 84 Va. 441, 4 S. B. Rep. 742. But a statute purporting to affect the remedy only, but which in effect denies or obstructs rights accruing by contract, is directly obnoxious to the prohibition of the constitution. Homestead Cases, 22 Gratt. 288; Merchants’ Bank v. Ballou, 98 Va. 112, 32 S. E. Rep. 481.
Statutes Regulating Questions of Evidence. — The legislature may prescribe rules of evidence to govern the procedure of the state courts and the constitution of the United States has no application in such case. Hence, a statute requiring, in a suit to test the genuineness of coupons cut from state bonds, the production of the bonds with proof that the coupons were actually cut therefrom, is not repugnant to the constitution. Cornwall v. Com., 82 Va. 644; Newton v. Com.. 82 Va. 647; Com. v. Weller, 82 Va. 721, 1 S. E. Rep. 102; Com. v. Booker, 82 Va. 964, 7 S. E. Rep. 381; McGahey v. Com., 85 Va.519, 8 S. E. Rep. 244; Bryan v. Com., 85 Va. 526, 8 S. E. Rep. 246; Cooper v. Com., 85 Va. 528, 8 S. E. Rep. 247; Laube v. Com., 85 Va. 530, 8 S. E. Rep. 246; Com. v. Larkin, 88 Va. 422, 13 S. E. Rep. 901: Ex parte Ayers, 123 U. S. 443, 8 Sup. Ct. Rep. 164. See also, Com. v. Jones, 82 Va. 789, 1 S. E. Rep. 84; Maury v. Com., 92 Va. 310, 23 S. E. Rep. 757.
But where coupons cut from state bonds are made receivable for taxes, an act providing that expert evidence shall not be received as to the genuineness of such coupons, violates the obligation of the contract; and where coupons are receivable for taxes, and judgment has been recovered against a taxpayer for his taxes and costs, the taxpayer is entitled to pay the whole judgment with such coupons. McGahey v. State, 135 U. S. 662, 10 Sup. Ct. *739 Rep. 972, overruling Com. v. Weller, 82 Va. 721, 1 S. E. Rep. 102; Com. v. Booker, 82 Va. 961, 7 S. E. Rep. 381.
An act of congress laying- a tax on stamps and prohibiting a party from giving an unstamped bond in evidence is no violation of the constitution. Woodson v. Randolph. 1 Va. Cas. 128.
Statutes Regulating Procedure. — But a statute providing that when coupons from state bonds are tendered in payment of taxes, together with money for the payment of the same, the coupons shall be delivered to the judge of the circuit court, who shall,, upon petition of the taxpayer, impanel a jury to try whether the coupons tendered are genuine, and, if they are, the court is to certify them to the treasurer. who is to refund the money paid for taxes out of the money in the treasury, in preference to other demands, does not create a vested right in the taxpayer which cannot be taken away by subsequent legislature. Maury v. Com., 92 Va. 310, 23 S. E. Rep. 757. See also, Com. v. Jones, 82 Va. 789, 1 S. E. Rep. 81.
Changing Statutes ol Limitation. — A distinction is taken in favor of an act of the legislature which re vives a remedy, which is lost by reason of a statute of limitation, and the case of a remedy cut off or destroyed by the same authority. The former does not violate the obligation of a contract; the latter does. The former is a privilege which may be conferred by the same power by which it was divested; the latter affects the vested rights of a party. Caperton v. Martin, 1 W. Va. 138; Wyatt v. Morris, 2 W. Va. 575; Huffman v. Alderson, 9 W. Va. 616; Keller v. McHuffman, 15 W. Va. 64; Industrial Co. v. Schultz, 43 W. Va. 470. 27 S. E. Rep. 255; McEldowney v. Wyatt, 14 W. Va. 711, 30 S. E. Rep. 239; State v. Mines. 38 W. Va. 125, 18 S. E. Rep. 470; State v. Brookover, 38 W. Va. 141, 18 S. E. Rep. 476; Bank of Virginia v. Hays, 37 W. Va. 475, 16 S. E. Rep. 561.
Same — Reviving Remedy in Cases Where Property Has Vested. — While the remedy upon an express contract, which has become barred by the statute, may be revived at the will of the legislature, yet, where the action is to recover the possession of either real or personal property, and especially in cases of ejectment and detinue, the rule is very different. In such cases it is settled that, when the statutory bar attaches, not only the remedy for the recovery of the property, is gone, but that the absolute title thereto is at once transferred to and thereby vested in the possession of the property. A subsequent repeal of the limitation law could not be given a retrospective effect, so as to disturb this title. It is vested as completely and perfectly, and is as safe from legislative interference as it would have been if it had been perfected in the owner by grant, or any species of assurance. Hall v. Webb, 21 W. Va. 318 ; McEldowney v. Wyatt, 44 W. Va. 711, 30 S. E. Rep. 239 ; Keller v. McHuffman, 15 W. Va. 64 ; Industrial Co. v. Schultz, 43 W. Va. 470, 27 S. E. Rep. 255.
Changing Mode of Enforcing Contracts against Joint Debtors. — And legislation providing that a creditor may compound or compromise with a joint contractor or co-obligor without releasing the others, and that the right of contribution shall not be affected thereby does not impair the obligation of existing contracts. Yuille v. Wimbish, 77 Va. 308.
Regulating Manner of Adjusting Confederate Contracts. — And a statute providing a mode of adjusting confederate contracts by reducing the nominal amount contracted to be paid to its gold value does not change the contract of the parties, but only provides a mode of ascertaining the value of the confederate money contracted to be paid. Pharis v. Dice, 21 Gratt. 303.
(c) Alteration or Repeal of Corporate Charters. Where Power is Reserved to Alter or Amend. -Where the legislature reserves the power to alter or amend corporate charters, an alteration made by them does not impair the obligation of the contract within the meaning of the constitution. Robinson v. Gardiner, 18 Gratt. 509.
Under the power reserved in the charter of a private corporation, to repeal, alter or modify the charter, the legislature may repeal the charter, but cannot modify it without the consent of the corporation. But if the corporation refuses to consent to the modification it must discontinue its business as a corporate body. Yeaton v. Bank of Old Dominion, 21 Gratt. 593.
Under Police Power. — The rights given to private corporations by their charters, and the manner of their exercise, are subject to such new regulations as from time to time may be made by the state with the view to the public protection, health, and safety, and in order to guard properly the rights of all other individuals and corporations. Hence, a railroad company, although no power is reserved to amend or repeal its charter, is nevertheless subject, like individuals, to such police laws as the legislature may from time to time enact Cor the protection and safety of citizens and the general convenience and good order. These laws although imposing- liabilities and duties on the company other than those contained in its charter or existing when it was granted, do not impair the obligations of the contract implied therein. Richmond, etc., R. Co. v. City of Richmond, 26 Gratt. 83 ; Va. Dev. Co. v. Crozer Iron Co., 90 Va. 126, 17 S. E. Rep. 806.
Thus, where the right to propel engines by steam through the streets of a city, is not given to the railroad company in its charter, either by express words or necessary implication, the city council may prohibit the railroad company from so doing, and no contract is thereby violated. Richmond, etc., R. Co. v. City of Richmond, 26 Gratt. 83. See post, “The Police Power.”
Corporations Take Charter Subject to General Law.— Corporations, chartered by the state, take their charters subject to the general law of the state, and subject to such changes as may be thereafter made, and it is competent for the state to pass laws giving parties who furnish materials and supplies to certain corporations prior liens and the charter rights of such corporation are not impaired thereby. Va. Dev. Co. v. Crozer Iron Co., 90 Va. 126, 17 S. E. Rep. 806.
Public Corporation — Charitable Trusts. — Where a fund has been dedicated for a public use, and a society chartered by the legislature to administer the trust, the society is a auasi public corporation over which the legislature has exclusive control, and it may repeal its charter at will. Wambersie v. Orange Humane Soc.. 84 Va. 446, 5 S E. Rep. 25.
C. Against Taking nob Public Usb. — -The constitution of the United States, as well as those of the several states, provides that private property shall not be taken for public use without j ust compensation. Under these provisions the courts all agree that where the property is actually invaded for public purposes, compensation must be made to the owner. Some of the state constitutions provide that if property is taken or damaged !or public use just compensation must be made to the owner for the *740 damage as -well as for the property actually taken. This last is true of the coustitutiou of West Virginia, so in that state the cases hold that the owner must he compensated for damage done his property, as well as for that actually taken for public use. Mason v. Harper’s Ferry Bridge Co., 17 W. Va. 396; Varner v. Martin, 21 W. Va. 534; B. & O. R. Co. v. Pittsburg, etc., R. Co., 17 W. Va. 812; Alexandria, etc., R. Co. v. Alexandria, etc., R. Co., 75 Va. 780, 40 Am. Rep. 743. For a full discussion of this subject, see monographic note on “Eminent Domain.”
VII. THE POLICE POWER.
1. NATURE AND EXTENT OF POWER — The police power of a state, in a comprehensive sense, embraces its whole system of internal regulation by which the state may subjectpersons andproperty to all kinds of reasonable restraints and burdens in order to secure the general comfort, health and prosperity of the state, to preserve public order, prevent offences, and to establish for the intercourse of citizens with citizens those rules of-good conduct and good neighborhood which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as it is reasonably consistent with a like enjoyment of rights by others. It is, however, subject to constitutional limitations, both state and federal. Peel Splint Coal Co. v. State, 36 W. Va. 802, 15 S. E. Rep. 1000.
2. SUBJECTS FOR ITS EXERCISE.
■Preservation of Public Morals — Sunday Laws, — The right to enact laws to protect the lives, health and property of the citizens of the state, and to preserve good order and the public morals, is a part of the police power reserved to the states, and though such laws may to some extent affect commerce and persons engaged in it, yet, if they are enacted in good faith, for police purposes, without discriminating against interstate or foreign commerce, and congress has not acted on the subject, they do not constitute a regulation of commerce within the inhibition of the “commerce clause” of the constitution of the United States. For example, a statute prohibiting the running or transportation, on Sunday, of locomotives and cars is a proper exercise of the police power, as its object is to promote the physical and moral well-being of society. N. & W. R. Co. v. Com., 93 Va. 749, 24 S. E. Rep. 837, overruling N. & W. R. Co. v. Com., 88 Va. 95, 13 S. E. Rep. 340.
Same — Laws against Gambling. — And under this power a state has authority to forbid its citizens to bet on horse racing in another state; and this right is not affected by the fact that the money is to be placed in á third state. The act forbidden is a wager, and over it and the actors in it, the state has complete jurisdiction, and it is immaterial where the race is to take place. Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930.
Preservation of Health and Safety of Public — Regulating Storage of Gunpowder. — Regulations and restrictions to promote and secure the public health and safety are also within the police power of the state and may extend to the protection both of person and property. In cities, and other places of dense population, the right to store gunpowder and other explosive and dangerous materials may be confined to certain limits, where the harm which may be produced by them will be reduced to the . minimum. Davenport v. Richmond, 81 Va. 636.
Same — Regulating the Practice of Hedicine. — Statutes regulating the practice of dentistry and medicine, providing means of securing the competency of persons engaged therein, and excluding all other persons from such practice, are defensible, both on the ground that they are in the interest of the public health and are designed and well calculated to protect the public from imposition and fraud. They will not be pronounced invalid unless they make arbitrary discriminations between persons equally well qualified to engage in the profession to which such statute applies. State v. Dent, 25 W. Va. 1; Dent v. West Virginia, 129 U. S. 114, 9 Sup. Ct. Rep. 231.
Same — Prevention of Riots, etc. — A municipal corporation clothed with general powers is authorized to order the destruction of private property within its boundaries when necessary for the public safety and good order. Hence the ordinance of the city of Richmond, providing for the destruction of all liquors in the city, in anticipation of the evacuation of the city by Confederate forces and its occupation by Union forces, was within this rule, and valid. Jones v. City of Richmond, 18 Gratt. 517.
Promotion of Health — Abatement of Nuisances.— The abatement of nuisances so clearly concerns the life, health and comfort of citizens, that it is one of the implied police powers of a municipal corporation, and need not be specifically granted in its charter. But such power cannot be taken to authorize the extra-judicial condemnation and destruction of that as a nuisance which, in its nature, situation, or use, is not such. Bristol, etc., Co. v. City of Bristol, 97 Va. 304, 33 S. E. Rep. 588, 5 Va. Law Reg. 242, and note.
. Same — Regulating the Sale of Oleomargarine. — The legislature, _ by virtue of its police power, has a right to prohibit and forbid the manufacturing and sale as an article of food, of any article designed to take the place of butter or cheese; and having the power to prohibit the sale or manufacture of such an article, it follows that they have the power to require that some distinguishing mark be placed upon it to prevent deception or imposition in the sale of the same, even though it should have the effect of injuring the sale of the article in question. Hence, a statute prohibiting and making criminal the sale of oleomargarine unless it has been colored pink is constitutional, though applicable to that manufactured without as well as that manufactured within the state. State v. Myers, 42 W. Va. 822, 26 S. E. Rep. 539.
General Welfare. — A statute enacted in the bona fide exercise of the police power of a state for the suppression of a recognized vice, the prohibition of the sale or manufacture of adulterated or impure food, or the prevention of the spread of disease among men or beasts, will not be held invalid as repugnant to the commerce clause. Lacey v. Palmer, 93 Va. 159, 24 S. E. Rep. 930.
A statute making it unlawful for hogs to run at large and imposing a fine upon the owner, and in addition giving the party injured by such hogs, when trespassing, a lien for double the amount of his damages, is a proper exercise of the police power and does not contravene any provision of the state or United States constitution. Haigh v. Bell, 41 W. Va. 19, 23 S. E. Rep. 666.
And a statute prohibiting the mining for coal within five feet of the boundary line of another’s . land, without his consent, and imposing a penalty for so doing, is a valid exercise of the police power of the state. Mapel v. John, 42 W. Va. 30, 24 S. E. Rep. 608.
*741 Regulation of Manner of Bxercising Corporate Fran-» chises. — Perhaps the most striking illustration of the exercise of the police power will he found among the judicial decisions which have held that the rights insured to private corporations hy their charters, and the manner of their exercise, are subject to such new regulations as from time to time may he made hy the state with a view to the public protection, health and safety, and in order to guard properly the rights of other individuals and corporations. Although these charters are to he regarded as contracts, and the rights assured hy them are inviolable, it does not follow that these rights are at once, hy force of the charter contract, removed from the sphere of state regulation, and that the charter implies an undertaking, on the part of the state, that in the same way in which their exercise is permissible at first, and under the regulations then existing, and those only, may the corporators continue to exercise their rights while the artificial existence continues. The obligation of the contract hy no means extends so far; hut, on the contrary, the rights and privileges which come into existence under it are placed upon the same footing with other legal rights and privileges of the citizen, and subject in like manner to proper rules for their due regulation, protection and enjoyment. Va. Devel. Co. v. Crozer I. Co., 90 Va. 126, 17 S. E. Rep. 806: Richmond, etc., R. Co. v. City of Richmond. 26 Gratt. 83. See “Alteration or Repeal of Corporate Charters.*’
Prohibiting Sale of Liquors. — So, upon this ground, statutes prohibiting the sale of intoxicating liquors are not repugnant to the constitution of the United States, either on the ground that they impair the obligation of contracts, or deprive a person of his liberty or property without due process of law, or that they violate the privileges and immunities of citizens of the United States. Such statutes have been invariably held valid by the supreme court of the United States as police regulations, looking to the protection of the lives, health and property of the citizens, and to the preservation of good order and the public morals, where they do not conflict with the paramount authority of congress to regulate commerce with foreign nations and among the several states. Savage v. Com., 84 Va. 619, 5 S. E. Rep. 565.
8. LIMITATIONS UPON ITS EXERCISE.
Limited by Constitution. — The police power, however broad and extensive, is not above the constitution, and must be exercised in subordination thereto. State v. Goodwill, 33 W. Va. 179, 10 S. E. Rep. 285.
Acts Done under Color of Power Must Not Be Arbi* trary. — A statute which inhibits a person to "keep in his possession, for another, spirituous liquors.” is in conflict with both the federal and state constitutions as it is not a reasonable exercise of the police power, because it has no reference to the prohibition of the sale of liquor. It is simply an attempt to make the possession of liqnor for any purpose a crime. State v. Gilman, 33 W. Va. 146, 10 S. E. Rep. 283.
Validity of Its Exercise a Judicial Question. — Generally, it is for the legislature to determine what laws and regulations are proper in the exercise of the police power; but if it passes an act ostensibly for the public health and safety, and thereby destroys or takes away the property of a citizen, or interferes with the rights or personal liberty, then it is for the courts to determine whether it is a proper and reasonable exercise of the power, and if it is not to declare it void. State v. Goodwill, 33 W. Va. 179, 10 S. E. Rep. 285; State v. Gilman, 83 W. Va. 146, 18 S. E. Rep. 283.
VIII. INTERSTATE COMMERCE.
1. WHAT CONSTITUTES.
Telegraph Companies as Instruments of Commerce. — The telegraph is an instrument of commerce, and telegraph companies are subject to the regulating power of congress in respect to their foreign and interstate business. A telegraph company occupies the same relation to commerce as a carrier of messages, that a railroad company does as a carrier of goods. Both companies are instruments of commerce, and their business is commerce itself. They do their transportation in different ways, and their liabilities are in some respects different, but they are both indispensable for those engaged to any considerable extent in commercial pursuits. Postal Tel. Co. v. Richmond, 99 Va. 102, 37 S. E. Rep. 789.
Empty Freight Cars Not within the Rule. — A train of empty cars which have been used in the past, and are intended to be used in the future exclusively in carrying articles of interstate commerce, is nevertheless not to be considered as engaged in interstate commerce until loaded with articles committed to the carrier to be transported to another state. Norfolk & Western R. Co. v. Com., 93 Va. 749, 24 S. E. Rep. 837.
2. POWER TO REGULATE VESTED IN CONGRESS.
What the Power to Regulate Interstate Commerce Embraces. — Under the constitution of the United States congress has power to regulate commerce among the states, and this power embraces the power to regulate all the various agencies by which that commerce is conducted. State laws which undertake, in any form to enforce a tax on such commerce, or to impose a burden or hindrance thereon, or to embarrass commercial intercourse and transactions, or to give citizens of one state any advantage over citizens of another state engaged in interstate commerce, are regulations of commerce among the states, and therefore void. Richmond, etc., R. Co. v. Patterson Tobacco Co., 92 Va. 670, 24 S. E. Rep. 261, affirmed in 169 U. S. 311; Adkins v. City of Richmond, 98 Va. 91, 34 S. E. Rep. 967.
Power, When Exercised by Congress, Is Exclusive.— The power to regulate commerce between the several states, when exercised by congress, is exclusive in its character, and the omission to exercise it is equivalent to a declaration of the will of congress that it shall remain free and uncontrolled in those respects in which the subject is capable of being dealt with by general regulations. Richmond, etc., R. Co. v. Patterson Tobacco Co., 92 Va. 670, 24 S. E. Rep. 261, affirmed in 169 U. S. 311; Atkins v. City of Richmond, 98 Va. 91, 34 S. E. Rep. 967.
3. TO WHAT EXTENT STATES MAY RECU-LATE. — The power to regulate commerce between the states covers a wide field and embraces a great 'variety of subjects some of which will call for uniform rules and national legislation, while others can be best regulated by rules and provisions suggested by the varying circumstances of differing places and limited in their operation to such place s respectively. And to the extent required by these last cases, the power to regulate commerce between the states may be exercised by the states, so far as *742 such legislation is not in conflict with some act of congress passed either before or after such state legislation regulating commerce in this particular case and manner. State v. Railroad Co., 24 W. Va. 783.
Applying this rule a state statute making it a misdemeanor to run freight trains on Sunday is not unconstitutional, where it contains nothing in its provision suggestive of a purpose to interfere with the interstate traffic, or indicative of any other intent than to prescribe a rule of civil conduct for people within the state, although it may affect interstate commerce to some extent, so far as running freight trains from one state to another is concerned. Norfolk, etc., R. Co. v. Com., 93 Va. 749, 24 S. E. Rep. 837, overruling Norfolk, etc., R. Co. v. Com., 88 Va. 95, 13 S. E. Rep 340. See ante. “The Police Power.”
Taxing Vessels Engaged in Interstate Commerce. — A state has power to tax vessels engaged in interstate commerce if they are owned and have their home port within the state. Wheeling, etc., Transportation Co. v. City of Wheeling, 9 W. Va. 170, 27 Am. Rep. 552.
Regulating Its Own Waters. — The navigable waters and the soil under them within the territorial limits of the state are the property of the state! to be controlled by the state at its own discretion for the benefit of its citizens, only so as not to interfere with the authority of the government of the United States to regulate commerce and navigation. McCready v. Com., 27 Gratt. 985; Morgan v. Com., 98 Va. 812, 35 S. E. Rep. 448; McCready v. Com., 94 U. S. 391.
4. WHAT AMOUNTS TO AN INTERFERENCE WITH INTERSTATE COMMERCE.
Regulating Delivery of Telegraph Messages. — A statute making it the duty of every telegraph or telephone company to deliver with promptness every message received to the person to whom it is addressed, if the regulations of the company require such delivery, or to forward promptly as directed, and providing a penalty for every failure to deliver or forward such message as promptly as practical, such penalty to be paid by the person sending the message or to the person to whom it is addressed, is not void, as imposing a burden upon, or as a regulation of interstate commerce, when applied to the failure of an interstate telegraph company to deliver a message sent from another state. Western Union Telegraph Co. v. Tyler, 90 Va. 297, 18 S. E. Rep. 280; Western Union Telegraph Co. v. Bright, 90 Va. 778, 20 S. E. Rep. 146; Western Union Telegraph Co. v. Powell, 94 Va. 268, 26 S. E. Rep. 828.
License Tax for Sale of Cigarettes Imported in Orgi-nal Packages. — Cigarettes manufactured in one state and imported into another in the original package may be sold in such original package, and a state statute requiring the payment of a license fee for the privilege of selling cigarettes at retail, so far as it applies to cigarettes imported and sold by the importer in the original package, is a regulation of interstate commerce, and therefore void. State v. Goetze, 43 W. Va. 495, 27 S. E. Rep. 225.
Same — What Are Original Packages of Cigarettes.— Where cigarettes are manufactured in a sister state, and placed in paper boxes for convenience of transportation and sale, and such boxes are provided with the proper label, giving the name of the cigarettes, caution notice, the number of the factory, the number of the revenue district, the name of the state in which they are manufactured, and the proper internal revenue stamp, duly cancelled, is pasted across the end of such package so as to seal the same, in accordance with the requirements of the act of congress and internal revenue laws governing the packing, shipment, and sale of cigarettes, such paper box must be regarded as an original package; and its character is not changed by its being placed, with other boxes of the same kind, in a wooden box for shipment. State v. Goetze, 43 W. Va. 495, 27 S. E. Rep. 225.
Interstate Commerce Cannot Be Taxed. — While the property of a telegraph company, situated within a state, may be taxed by the state as all other property is taxed, yet its business of an interstate character cannot be thus taxed. A general license tax on a telegraph company affects its whole business, interstate as well as domestic, and is unconstitutional. Postal Tel. Co. v. Richmond, 99 Va. 102, 37 S. E. Rep. 789.
But a city may impose a license fee upon every telegraph company or agency doing business in the city, for business done exclusively in the city, not including business done to and from points without the state, or business done for the government, but, if engaged in interstate commerce, the license tax cannot be in excess of what would be the tax on its property within the city limits under the ordinary modes of taxatiorf; and the payment of such license tax cannot be made a prerequisite to the right of the company to transact business. Postal Tel. Co. v. Richmond, 99 Va. 102, 37 S. E. Rep. 789.
Taxing Citizens of Another State Selling Goods by Sample. — it is competent for states to require a license to be obtained by every person selling goods by sample, who are not “resident merchants,” as a man may be a resident citizen and not a resident merchant, and the reverse; hence a statute requiring a license in such case is not 'unconstitutional as being a discrimination in favor of citizens of the state. Speer v. Com., 23 Gratt. 935, 14 Am. Rep. 164.
Taxation of Brokers Engaged in Interstate Commerce. —A resident of a state who solicits orders for the sale of goods by sample, solely for nonresident owners, and who forwards such orders and receives a commission for the sales negotiated by him, is a broker engaged in interstate commerce, and neither the state nor any municipal corporation can impose a license tax on him for such business. Adkins v. City of Richmond, 98 Va. 91, 34 S. E. Rep. 967.
Taxation of Peddlers, — A state has the right to impose a tax on peddlers, where it operates uniformly upon all citizens and does not discriminate in favor of its citizens and against citizens of other states, or where the tax imposed is in the exercise of police powers, and not a regulation of commerce under cover of the power, although incidentally it may have that effect. But where any injurious discrimination is made in favor of the resident against the nonresident, or with respect to the sales of articles manufactured in that state over similar articles manufactured abroad, the law is repugnant to the constitution of the United States, and therefore void. Com. v. Myer, 92 Va. 809, 23 S. E. Rep. 915.
Sunday Laws. — A law imposing a fine upon any person who labors on Sunday, or employs his servants in so doing, except in works of necessity and charity, though it incidentally affects interstate commerce, is not to be regarded as an interference with interstate commerce but is purely a law in reference to the internal policy of thestate, and maybe enforced against a railroad company engaged in interstate commerce. State v. Railroad Co., 24 W. Va. 783.
*743 Making Carrier Liable beyond Its Own Line. — A statute providing- that a common carrier accepting anything for transportation directed to a destination beyond its own line shall he deemed to assume obligation for its safe carriage to such destination, unless, at the time of such acceptance, it he released from such liability by a contract in writing, signed by the owner, is not a regulation of interstate commerce. Richmond, etc., R. Co. v. Patterson Tobacco Co., 92 Va. 670, 24 S. 32. Rep. 261, affirmed in 169 U. S. 311.
Discrimination against Publication of a Sister State. —A state statute discriminating against publishers of boohs of another state is unconstitutional, as it violates the commerce clause of the federal constitution. Ex parte Rollins, 80 Va. 314.
5. THE INTERSTATE COMMERCE ACT.
Contracts Made under Interstate Commerce Act.— The general rule that a contract made in violation of law is void, and that no recovery can be had upon it, applies to contracts made in violation of the Interstate Commerce Law. Southern Railway Co. v. Wilcox, 99 Va. 394, 39 S. E. Rep. 144.
Lowering a freight rate in the manner required by the Interstate Commerce Act, after a contract has been made in violation of that act, does notren-der the contract valid and binding on the carrier, and, if under no legal obligation to lower them, the carrier may restore the rate so lowered. Southern Railway Co. v. Wilcox, 99 Va. 894, 39 S. E. Rep. 144.
IX. TAXATION.
1. WHO MAY EXERCISE TAXING POWER.
Power Inherent in the Legislature. — That taxation is a legislative power, has never been questioned in this country. The power to tax rests upon necessity, and is inherent in every sovereignty. The legislature of every free state will possess it, under the general grant of legislative power, whether particularly specified in the constitution among the powers to be exercised by it or not. Com. v. Moore, 25 Gratt. 961: Eyre v. Jacob, 14 Gratt. 426.
The legislature possesses the full, absolute, supreme power of taxation, except so far as it may have been surrendered to the general government or may be Interdicted by the restrictions and mandates of the state constitution, which is not to be consulted as to the powers given, but only as to the limitations imposed. Helfrick’s Case, 29 Gratt. 848; Com. v. Moore, 25 Gratt. 966: Peters v. Lynchburg, 76 Va. 932; Eyre v. Jacob, 14 Gratt. 422.
And an act requiring the county court to lay a levy upon the titheables of the county for the purpose of improving the navigation of a stream lying within it, though passed without the assent of the people, is valid. Harrison v. Holland, 3 Gratt. 247. See also, Goddin v. Crump, 8 Leigh 120; Bull v. Read, 13 Gratt. 78; Wade v. City of Richmond, 18 Gratt. 583; Dinwiddie County v. Stuart, 28 Gratt. 526.
Delegation to Counties of nunicipalities. — And the legislature has full power to authorize counties and municipal corporations to levy taxes within their bounds for their peculiar purposes. And the mode, subjects, and extent of such taxation is not limited or regulated by the constitutional provisions in relation to taxation and finance, as these provisions relate to taxation ior the purpose of state revenue only. Gilkeson v. Frederick Justices, 13 Gratt. 577.
And in the absence of constitutional restrictions, the legislature may impose upon a taxing district, such as a town, the duty of keeping in repair the streets within, and relieve it from taxation for roads without its limits. The legislature is the final judge of this question; and the legislature of Virginia is not restrained in this respect by the constitution of the state, and it may exempt land lying within a town from the payment of a county road tax. Supervisors of Washington County v. Saltville Land Co., 99 Va. 640, 89 S. E. Rep. 704.
But county authorities are not authorized by the constitution, independent of the action of legislature, to assess railroad or other property for taxation and county levies upon it. Balt., etc., R. Co. v. Koontz, 77 Va. 699.
County Cannot Tax unless Authorized to Do So.— Under the constitution of the state a county cannot exercise the powers of taxation, unless authorized to do so by the legislature. Va., etc., R. Co. v. Washington County, 30 Gratt. 484; Shenandoah, etc., R. Co. v. Supervisors, 78 Va. 269.
But in Virginia the right of a county to impose a county school tax Is conferred by the constitution, to which the legislature has given effect by appropriate legislation, and this right cannot be taken away by the legislature. The people and the property of a town are subject to the county government for county purposes, and the legislature cannot exempt them from the payment of a school tax. Supervisors of Washington County v. Saltville Land Co., 99 Va. 640, 39 S. E. Rep. 704.
Power Delegated Cannot Be Taken Away. — But where the constitution confers upon each county the right to levy a tax upon property for the public free schools the legislature cannot deprive the county of such power. Robertson v. Preston, 97 Va. 296, 33 S. E. Rep. 618; Supervisors v. Saltville Land Co., 99 Va. 640, 39 S. E. Rep. 704.
Towns and Counties Cannot Levy Capitation Tax.— The Virginia constitution limits the amount of the capitation tax which may be levied annually by the state to one dollar, and by counties and corporations to fifty cents, for all purposes. Hence, the legislature has no power to authorize towns and subdivisions of counties and cities to levy a capitation tax. The only corporations authorized to levy such a tax are cities which have separate governments, and which are not taxed for county purposes. Robertson v. Preston, 97 Va. 296, 33 S. E. Rep. 618.
2. WHAT MAY BE TAXED.
Intoxicating Liquors. — Licenses for the sale of intoxicating liquors are not only imposed for the purpose of raising revenue, but also 1 or the purpose of regulating the traffic and consumption of these articles, and hence the state may Impose such conditions for conducting said traffic as it may deem most for the public good. Jelly v. Oils, 27 W. Va. 267; Moundsville v. Fountain, 27 W. Va. 182; Beasley v. Town of Beckley, 28 W. Va. 81.
Newspapers. — And it is competent for a city to impose a tax upon the business of publishing a newspaper as the constitutional provision guaranteeing freedom of the press was not intended to prevent taxation of the business of publishing. Norfolk v. Norfolk Landmark Co., 95 Va. 564, 28 S. E. Rep. 959.
Merchant Dealing in Second Hand (roods. — The legislature may require a regular merchant who has a license to transact a general merchandising business, to take out the license required of dealers in second hand articles before allowing him to deal in such articles. Hirch v. Com., 21 Gratt. 785. See also. Morgan v. Com., 98 Va. 814, 35 S. E. Rep. 448; Com. v. Moore, 25 Gratt. 960; Lewellen v. Lockharts, 21 Gratt. 570, and foot-note.
Fishing. — It is competent for the state to impose a license tax upon persons engaged in fishing in the *744 public waters of the state, and in addition, to tax tbe tackle used to catch the fish. Such taxation is not double. Morgan v. Com., 98 Va. 812, 35 S. E. Rep. 448.
Lawyers. — And an ordinance providing for taxing lawyers is not an income tax, and is constitutional. Ould v. City of Richmond, 23 Gratt. 464.
Billiard Saloon. — And the keepers of a billiard saloon may be required to take out a license, and pay a tax thereon. Lewellen v. Lockharts, 21 Gratt. 570.
Officers of Sheriff or Sergeant. — And assessments in certain cases on the office of sheriff and sergeant is not in violation of the constitution. Gilkeson v. Frederick Justices, 13 Gratt. 577.
Taxing Business. — A tax on the business of selling property is a tax on the property itself. If the property be nontaxable, there can be no tax on the business of selling it. Otherwise, where the property is taxable. Com. v. Maury, 82 Va. 883, 1 S. E. Rep. 185.
Under the provisions of the constitution of Virginia, the legislature has no power to levy a license tax upon any employment or business other than those named in the fourth section, except in cases where such business cannot be reached by the ad valorem, system. Whether a business can or cannot be reached by the ad valorem system is a question primarily for the legislature, and its determination of the question cannot be held to be erroneous unless it is manifestly so. Morgan’s Case, 98 Va. 812, 35 S. E. Rep. 448: Com. v. Moore, 25 Gratt. 957; Thomas v. Snead, 99 Va. 613, 39 S. E. Rep. 586.
Tonnage Duty Cannot Be Imposed by State. — The states have no power to impose a tonnage duty. Johnson v. Drummond, 20 Gratt. 419.
3. ESSENTIALS OF A VALID TAX.
Must Be Equal and Uniform. — The constitution expressly provides, that all taxes must be equal and uniform. A tax upon fishermen in proportion to the depth of the water from which they take fish is an equal and uniform tax within the meaning of the constitution. Morgan v. Com., 98 Va. 812, 35 S. E. Rep. 448.
And although the Virginia constitution provides that taxes shall be equal and uniform, it is within the constitutional power of the legislature to impose a tax upon the transmission of estates by devise or descent, and prescribe the rate of same. Eyre v. Jacob, 14 Gratt. 422, and foot-note; Miller v. Com., 27 Gratt. 110; Schoolfield v. City of Lynchburg, 78 Va. 371; Peters v. City of Lynchburg, 76 Va. 927; Ould v. City of Richmond, 23 Gratt. 464; Slaughter’s Case, 13 Gratt. 767, and foot-note; Gilkeson v. Frederick Justices, 13 Gratt. 677, and foot-note.
And the adoption of a constitutional provision requiring taxation to be equal and uniform throughout the state, and that all property both real and personal shall be taxed in proportion to its value, does not operate to repeal a law imposing a tax in force at the time of its adoption; and such a provision does not apply to taxation by municipalities. Douglass v. Harrisville, 9 W. Va. 162.
Taxes on Licenses Need Not Be Equal and Uniform.— But taxes on licenses are not required by the constitution of Virginia to be equal and uniform. Slaughter v. Com., 13 Gratt. 767; Ould v. City of Rich., 23 Gratt. 473; Com. v. Moore, 25 Gratt. 958; Danville v. Shelton, 76 Va. 329; Eyre v. Jacob, 14 Gratt. 422; Gilkeson v. Frederick Justices, 13 Gratt. 577; West. Union Tel. Co. v. City of Rich., 26 Gratt. 1.
Taxing Oyster Industry — Uniformity of Tax. — A statute which requires persons taking oysters from the public water to make a return of sale of the oysters made by him during the week preceding, and which imposes a tax on such sales equal to the amount of tax levied by the state on any other species'of property, and which prescribes penalties for failure to make such returns, but which allows the party, if he prefers, to pay a certain sum in lieu of the tax, is constitutional. The uniformity of the tax is not affected by the manner in which the value of the property is ascertained; nor is the tax a license or income tax. Com. v. Brown, 91 Va. 762, 21 S. E. Rep. 357.
Exact Justice Often Not Attainable. — Exact justice and equality are not attainable in matters of taxation, and consequently, are not required ; the most that can be done being to approximate them as near as possible. Ould v. Richmond, 23 Gratt. 473; Helfrick’s Case, 29 Gratt. 850; Com. v. Moore, 25 Gratt. 958; Eyre v. Jacob, 14 Gratt. 422.
Tax Must Not Exceed Constitutional Amount. — Under the provision limiting the capitation tax which may be imposed by the legislature, an act requiring all male persons between certain ages to work on the public roads, or in default thereof to pay a fine assessed by the legislature, is unconstitutional and void, as such a statute, in effect, imposes an additional tax. Proffit v. Anderson, 1 Va. Dec. 908, 20 S. E. Rep. 887.
Must Conform to the Constitution.’ — A levy by a board of supervisors for district school purposes on the property of a railroad company, as a whole, within a county, without reference to what part thereof is located in the several districts, and which does not show the amount levied for each district, is void, because in violation of sec. 8, art. 8 of the Virginia Constitution. New York, etc., R. Co. v. Supervisors, 92 Va. 661, 24 S. E. Rep. 221.
An act authorizing commissioners to levy a capitation tax upon the white male inhabitants, and an ad valorem tax upon the property of the district sufficient to raise the amount necessary to defray the expenses of the free schools of the district is to be construed in accordance with the constitution; and the capitation tax is properly levied upon the white male inhabitants above twenty-one years of age only, and the ad valorem tax upon slaves is properly levied upon slaves over twelve years of age valued at three hundred dollars each. And the ratio of the capitation to the ad valorem tax may be greater than that prescribed in the constitution. Bull v. Read, 13 Gratt. 78.
4. EXEMPTION FROM TAXATION.
Power to Exempt an Essential Attribute of Sovereignty. — The principle is well settled that the power of exemption, as well as the power of taxation, is an essential attribute of sovereignty, and can only be surrendered or diminished in plain and explicit terms. But the general rule and policy of the state is to tax all property. Exemption from taxation is the exception. City of Richmond v. Richmond, etc., R. Co., 21 Gratt. 604; Com. v. Richmond, etc., R. Co., 81 Va. 355; Probasco v. Town of Moundsville, 11 W. Va. 501.
Virginia Legislature Is Empowered to Exempt Certain Property. — The constitution of Virginia empowers the legislature to exempt all property from taxation which is used exclusively for state, count}’, municipal, benevolent, charitable, educational and religious purposes, and this grant of power to exempt all property used for the purposes enumerated, carries with it the power to exempt property, the proceeds of which are devoted to any of those purposes. Hence Code 1873, ch. 33, sec. 14, *745 and acts amendatory thereof (see Va. Code 1887, sec. 457, 488), exempting from taxation property owned "by benevolent associations, is constitutional and valid. City of Petersburg v. Petersburg Ben. Mech. Asso., 78 Va. 431; City of Staunton v. Mary Baldwin Seminary. 99 Va. 653, 39 S. E. Rep. 596.
Exemption from Taxation Constitutes a Contract.— It is well settled that an exemption from taxation granted in a charter of a railroad company, constitutes a contract which is protected by a federal constitution, and is irrepealable unless the power of repeal has been reserved by the legislature, or is subsequently acquired. Com. v. Richmond, etc., R. Co., 81 Va. 355.
Exemption Must Be Made According to Constitution. —Under article 8, sec. 1 of the West Virginia Constitution of 1863, all1* property both real and personal must be taxed, except such as the legislature may exempt under the exception contained in this section. Therefore, an act of legislature exempting the property of a railroad corporation from taxes is unconstitutional and void as such property is not within the exception. C. & O. Ry. Co. v. Miller, 19 W. Va. 408.
5.BOCAL ASSESSMENTS.
General Principles Governing Local Assessments.— The legislature may delegate to municipalities the power to levy local assessments upon property specially benefited by public improvements within their borders. And if provision is made for giving notice to the owners of the property, and each proprietor has an opportunity to be heard as to what proportion of the tax shall be assessed upon his land, there is no taking of property without due process of law. Nor are such assessments obnoxious to constitutional provisions that taxation shall be uniform and eqnal, and assessed upon property in proportion to its money value, as such provisions only apply where the taxpayer has received no special benefit. Norfolk City v. Ellis, 26 Gratt. 227; Davis v. City of Lynchburg, 84 Va. 861, 6 S. E. Rep. 230; Richmond, etc., R. Co. v. Lynchburg, 81 Va. 473; Sands v. City of Richmond. 31 Gratt 571; Violett v. Alexandria, 92 Va. 561, 23 S. E. Rep. 909. See also, City of Norfolk v. Chamberlain, 89 Va. 196, 16 S. E. Rep. 730; McCrowell V. City of Bristol. 89 Va. 652, 16 S. E. Rep. 867.
Thus, the legislature may authorize the council of a city or town, where the owner of property adjacent to a sidewalk fails or refuses to pave such sidewalk, to cause the same to be done at the expense of the city, town or village, and to assess the amount of such expense upon such owner, to be collected in the manner provided for the collection of taxes. Wilson v. Town of Philippi, 39 W. Va. 75, 19 S. E. Rep. 553.
Local Assessments Pound upon Idea of Benefits.— These assessments are not founded upon any idea of revenue, but upon the theory of benefits conferred by such improvements upon the adjacent lots. It is regarded as a system of equivalents. It imposes the tax according to the maxim, that he who receives the benefit ought to bear the burden, and it aims to exact from the party assessed no more than his just share of that burden, according to an equitable rule of apportionment. Norfolk City v. Ellis, 26 Gratt. 227; Davis v. City of Lynchburg, 84 Va. 861. 6 S. E. Rep. 230; Richmond, etc., R. Co. v. Lynchburg, 81 Va. 473; Violett v. Alexandria, 92 Va. 561, 23 S. E. Rep. 909; Sands v. City of Richmond, 31 Gratt. 571.
Taxpayer Hust Have Notice and Opportunity to Contest. — A law authorizing local assessments without giving to the person of whom such assessment is exacted reasonable notice, and a reasonable opportunity to appear and contest the legality, justice, and correctness of such assessment before an impartial tribunal, before it is finally determined upon, deprives such person of his property without due process of law, and is therefore void. Norfolk v. Young, 97 Va. 728, 34 S. E. Rep. 886; Heth v. Radford, 96 Va. 272, 31 S. E. Rep. 8; Violett v. Alexandria, 92 Va. 561, 23 S. E. Rep. 909.
But if the law providing for the assessment provides for a mode of confirming or contesting the charge thus imposed in the ordinary course of justice, with such notice to the person of such proceeding in regard to the property as is appropriate to the nature of the case, the judgment in such proceeding cannot be said to deprive the owner of his property without due process of law. Davis v. Lynchburg, 84 Va. 861, 6 S. E. Rep. 230; Violett v. Alexandria, 92 Va. 561, 23 S. E. Rep. 909.
Assessment for Waterworks —Exemption.—The provisions of a municipal charter empowering the council, when water mains are laid in the streets, to levy an annual special assessment on the real estate on both sides of the street to meet the expenses of the waterworks, and which further authorize it to exempt from such assessment any property to which water is supplied and water rates charged, are not repugnant to the constitution. Richmond, etc., R. Co. v. City of Lynchburg, 81 Va. 473.
Power to Levy Strictly Construed. — While the legislature may grant to municipal corporations the power to levy local assessments for street improvements, yet the statute making the grant must be strictly construed, and the municipality must keep strictly within its provisions. Violett v. Alexandria, 92 Va. 561, 23 S. E. Rep. 909, 31 L. R. A. 382 ; Orange, etc., R. Co. v. Alexandria, 17 Gratt. 176; Richmond v. Daniel, 14 Gratt. 387; Schoolfield v. Lynchburg, 78 Va. 366 ; Green v. Ward. 82 Va. 324 ; Kirkham v. Russell, 76 Va. 956; Peters v. Lynchburg, 76 Va. 927. See monographic note on “Municipal Corporations’' appended to Danville v. Pace, 25 Gratt. 1.
6. REMEDY AGAINST ILLEGAL TAX. — Proceeding by injunction is the proper mode by which to test the legality of a levy made by an officer under the supposed authority of a law, the constitutionality of which is denied. Eyre v. Jacob, 14 Gratt. 422, foot-note ; City of Richmond v. Crenshaw, 76 Va. 940; Blanton v. So. Fertilizing Co., 77 Va. 335; S. V. R. Co. v. Supervisors, 78 Va. 276; Lynchburg, etc., Co. v. Dameron, 95 Va. 546, 28 S. E, Rep. 951 ; Kuhn v. Board of Education, 4 W. Va. 499 ; City of Staunton v. Mary Baldwin Seminary, 99 Va. 653, 39 S. E. Rep. 596.
But it has been held that injunction will not lie to prevent the collection of an illegal tax, unless the case presents some peculiar ground for equity jurisdiction, as the prevention of a multiplicity of suits, or the removal of a cloud from the title, or where an action at law cannot afford an adequate remedy. Douglass v. Town of Harrisville, 9 W. Va. 162.
7. ENFORCEMENT OF TAX.
Imprisonment of Delinquent. — The bill of rights of Virginia, which declares that no man shall “be deprived of his liberty except by the law of the land or the judgment of his peers,'’ does not forbid the state to enforce the collection of the tax on licenses, by imprisonment of the delinquent, when no personal property can be found by the officer out of *746 which to make the tax. Com. v. Byrne, 20 Gratt. 165.
Statutes Forfeiting Land. — Statutes forfeiting land for nonpayment of taxes are constitutional, and, in order to consummate a forfeiture in such case, no judgment or decree or other matter of record is necessary; the statute itself divests the title out of the defaulting owner and vests it in the commonwealth. Lennig v. White, 1 Va. Dec. 873, 20 S. E. Rep. 831; State v. Swann, 46 W. Va. 128, 33 S. E. Rep. 89; Wild v. Serpell, 10 Gratt. 405; Staats v. Board, 10 Gratt. 400; Hale v. Branscum, 10 Gratt. 418; Levasser v. Washburn, 11 Gratt. 572: Yokum v. Fickey, 37 W. Va. 762, 17 S. E. Rep. 318; King v. Mullins, 171 U. S. 404, 18 Sup. Ct. Rep. 925.
But an act of congress providing for the forfeiture of land for the nonpayment of taxes, as a penalty upon persons who were engaged in the rebellion against the United States, is a legislative conviction and punishment without trial, and is a bill of attainder and void. Martin v. Snowden, 18 Gratt. 100.
Selling Land for Taxes — Amount of Land Which 5houId Be Sold. — The power of congress to provide for the sale of land for payment of taxes is limited to that object, and a law which requires that , the whole land be sold in all cases, without regard to the fact that it may be divided without injury and the tax paid by a sale of a part only, is unconstitutional. Martin v. Snowden, 18 Gratt. 100.